## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| WHOLE WOMAN'S HEALTH; PLANNED PARENTHOOD CENTER FOR CHOICE; PLANNED PARENTHOOD OF GREATER TEXAS SURGICAL HEALTH SERVICES; PLANNED PARENTHOOD SOUTH TEXAS SURGICAL CENTER; ALAMO CITY SURGERY CENTER PLLC d/b/a ALAMO WOMEN'S REPRODUCTIVE SERVICES; SOUTHWESTERN WOMEN'S SURGERY CENTER; and NOVA HEALTH SYSTEMS, INC. d/b/a REPRODUCTIVE SERVICES, each on behalf of itself, its staff, physicians and patients; and CURTIS BOYD, M.D.; ROBIN WALLACE, M.D.; BHAVIK KUMAR, M.D.; and ALAN BRAID, M.D., each on behalf of himself and his patients, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| KEN PAXTON, Attorney General of Texas; MARGARET MOORE, District Attorney for Travis County; NICHOLAS LAHOOD, Criminal District Attorney for Bexar County; JAIME ESPARZA, District Attorney for El Paso County; FAITH JOHNSON, District Attorney for Dallas County; SHAREN WILSON, Criminal District Attorney for Tarrant County; RICARDO RODRIGUEZ, JR., Criminal District Attorney for Hidalgo County; ABELINO REYNA, Criminal District Attorney for McLennan County; and KIM OGG, Criminal District Attorney for Harris County, each in their official capacities, as well as their employees, agents, and successors, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

CAUSE NO. A-17-CV-690-LY

## FIRST AMENDED COMPLAINT

Plaintiffs, by and through their undersigned attorneys, bring this Complaint against the above-named Defendants, their employees, agents and successors in office, and in support thereof allege the following:

## I.  PRELIMINARY STATEMENT

1.     Pursuant to 42 U.S.C. § 1983, Plaintiffs, Texas healthcare providers, bring this action on behalf of themselves, their staff, physicians, and patients.  They challenge certain provisions of Texas Senate Bill 8, enacted during the 2017 legislative session ("S.B. 8"), that ban the dilation and evacuation abortion procedure ("D & E"), the safest and most common method of abortion after approximately 15 weeks of pregnancy.  S. B. 8, creating Tex. Health & Safety Code §§ 171.151-154.  A copy of S.B. 8 is attached hereto as Exhibit 1.  These provisions are scheduled to take effect on September 1, 2017.

2.     The ban on D & E threatens the health of Plaintiffs' patients and their access to abortion care, subjects Plaintiffs to criminal penalties, and violates Plaintiffs' patients' constitutional rights.  Specifically, a ban on D & E procedures imposes an undue burden on women seeking second-trimester abortions.  In addition, to the extent that any physician can continue to provide D & E procedures, the ban violates Plaintiffs' patients' right to bodily integrity because it would require them to accept unnecessary, invasive, and potentially painful medical procedures, in order to access their constitutional right to abortion.

3.     To protect Plaintiffs and their patients from these constitutional violations, and to avoid irreparable harm, Plaintiffs seek declaratory and injunctive relief to prevent enforcement of the D & E ban.

## II.  JURISDICTION AND VENUE

4.     The Court has subject matter jurisdiction over Plaintiffs' federal claims under 28 U.S.C. §§ 1331 and 1343(a)(3).

5.     Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this court.

6.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendants Ken Paxton and Margaret Moore, who are sued in their official capacities, carry out their official duties in this district.

## III.  PLAINTIFFS

7.     Plaintiff Whole Woman's Health operates licensed abortion facilities in Austin, Fort Worth, McAllen, and San Antonio.  Whole Woman's Health provides a range of reproductive health services, including medication and surgical abortions.  Whole Woman's Health provides abortions in the second trimester of pregnancy, including D & E procedures that would be banned should S.B. 8 take effect.  Whole Woman's Health sues on behalf of itself, its staff, physicians, and patients.

8.     Plaintiff Planned Parenthood Center for Choice ("PP Houston") operates a licensed ambulatory surgical center in Houston.  PP Houston provides a range of reproductive health services, including medication and surgical abortions.  PP Houston provides abortions in the second trimester of pregnancy, including D & E procedures that would be banned should S.B. 8 take effect.  PP Houston sues on behalf of itself, its staff, physicians, and patients.

9.     Plaintiff Planned Parenthood of Greater Texas Surgical Health Services ("PPGT Surgical Health Services") operates licensed ambulatory surgical centers in Austin, Dallas, and Fort Worth, and a licensed abortion facility in Waco.  PPGT Surgical Health Services provides a range of reproductive health services, including medication and surgical abortions.  PPGT Surgical Health Services provides abortions in the second trimester of pregnancy, including D & E procedures that would be banned should S.B. 8 take effect.  PPGT Surgical Health Services sues on behalf of itself, its staff, physicians, and patients.

10.    Plaintiff Planned Parenthood South Texas Surgical Center ("PPST Surgical Center") operates a licensed ambulatory surgical center in San Antonio.  PPST Surgical Center provides a range of reproductive health services, including medication and surgical abortions. PPST Surgical Center provides abortions in the second trimester of pregnancy, including D & E procedures that would be banned should S.B. 8 take effect.  PPST Surgical Center sues on behalf of itself, its staff, physicians, and patients.

11.    Plaintiff Alamo City Surgery Center PLLC d/b/a Alamo Women's Reproductive Services ("Alamo Women's"), is a licensed ambulatory surgical center in San Antonio.  Alamo Women's provides a range of reproductive health services, including medication and surgical abortions.  Alamo Women's provides abortions in the second trimester, including D & E procedures that would be banned should S.B. 8 take effect.  Alamo Women's sues on behalf of itself, its staff, physicians, and patients.

12.    Plaintiff Southwestern Women's Surgery Center ("Southwestern") operates a licensed ambulatory surgical center in Dallas.  Southwestern provides a range of reproductive health services, including medication and surgical abortions.  Southwestern provides abortions in

4

the second trimester, including D & E procedures that would be banned should S.B. 8 take effect. Southwestern sues on behalf of itself, its staff, physicians, and patients.

13.     Plaintiff Nova Health Systems, Inc. d/b/a Reproductive Services ("Reproductive Services"), operates a licensed abortion facility in El Paso.  Reproductive Services provides a range of reproductive health services, including medication and surgical abortion.  Reproductive Services provides abortions in the second trimester, including D & E procedures that would be banned should S.B. take effect.  Reproductive Services sues on behalf of itself, its staff, physicians, and patients.

14.     Curtis Boyd, M.D., is a family practice physician licensed to practice in the State of Texas.  Dr. Boyd has an ownership interest in Southwestern.  He provides D & E procedures that would be banned should S.B. 8 take effect.  Dr. Boyd sues on his own behalf and on behalf of his patients.

15.     Robin Wallace, M.D., M.A.S., is a board-certified family medicine physician licensed to practice in the State of Texas.  Dr. Wallace is the medical director at Southwestern. She provides D & E procedures that would be banned should S.B. 8 take effect.  Dr. Wallace sues on her own behalf and on behalf of her patients.

16.     Bhavik Kumar, M.D., M.P.H., is a board-certified family medicine physician licensed to practice in the State of Texas.  Dr. Kumar is the medical director for the Whole Woman's Health clinics in Texas.  He provides D & E procedures that would be banned should S.B. 8 take effect.  Dr. Kumar sues on his own behalf and on behalf of his patients.

17.     Alan Braid, M.D. is a board-certified obstetrician/gynecologist licensed to practice in the State of Texas.  Dr. Braid has an ownership interest in Alamo Women's.  He provides D & E

procedures that would be banned should S.B. 8 take effect.  Dr. Braid sues on his own behalf and on behalf of his patients.

## IV.  DEFENDANTS

18.     Defendant Ken Paxton is the Attorney General of Texas.  He is empowered to assist county and district attorneys in the prosecution of criminal offenses, Tex. Govt. Code § 574.004, and therefore criminal violations of S.B. 8.  He is sued in his official capacity and may be served with process at 300 West 15th Street, Austin, Texas 78701.

19.     Defendant Margaret Moore is the District Attorney for Travis County.  She is responsible for prosecuting criminal violations of the D & E ban occurring in Travis County.  She is sued in her official capacity and may be served with process at 509 West 11th Street, Room 300, Austin, Texas 78701.

20.     Defendant Nicholas LaHood is the Criminal District Attorney for Bexar County.  He is responsible for prosecuting criminal violations of the D & E ban occurring in Bexar County.  He is sued in his official capacity and may be served with process at 101 West Nueva Street, 4th Floor, San Antonio, Texas 78205.

21.     Defendant Faith Johnson is the District Attorney for Dallas County.  She is responsible for prosecuting criminal violations of the D & E ban occurring in Dallas County.  She is sued in her official capacity and may be served with process at 133 North Riverfront Boulevard, LB 19, Dallas, Texas 75207.

22.     Defendant Jaime Esparza is the District Attorney for El Paso County.  He is responsible for prosecuting criminal violations of the D & E ban occurring in El Paso County.  He is sued in his official capacity and may be served with process at El Paso County Courthouse, 500 East San Antonio Avenue, Room 201, El Paso, Texas 79901.

23.     Defendant Kim Ogg is the Criminal District Attorney for Harris County.  She is responsible for prosecuting criminal violations of the D & E ban occurring in Harris County.  She is sued in her official capacity and may be served with process at 1201 Franklin Street, Suite 600, Houston, Texas 77002.

24.      Defendant Ricardo Rodriguez, Jr., is the Criminal District Attorney for Hidalgo County.  He is responsible for prosecuting criminal violations of the D & E ban occurring in Hidalgo County.  He is sued in his official capacity and may be served with process at 100 East Cano, Edinburg, Texas 78539.

25.     Defendant Abelino Reyna is the Criminal District Attorney for McLennan County. He is responsible for prosecuting criminal violations of the D & E ban occurring in McLennan County.  He is sued in his official capacity and may be served with process at 219 North 6th Street, Suite 200, Waco, Texas 76701.

26.     Defendant Sharen Wilson is the Criminal District Attorney for Tarrant County.  She is responsible for prosecuting criminal violations of the D & E ban occurring in Tarrant County. She is sued in her official capacity and may be served with process at the Tim Curry Criminal Justice Center, 401 West Belknap Street, Fort Worth, Texas 76196-0201.

**V.  FACTUAL ALLEGATIONS**

**Background**

27.     Legal abortion is extremely safe, and safer for a woman than carrying a pregnancy to term and giving birth.

28.     Nonetheless, the earlier in pregnancy a woman is able to accesses abortion care, the safer it is for her because remaining pregnant itself entails risks and the risks associated with abortion increase as pregnancy advances.

7

29.     In Texas, as in the nation as a whole, the vast majority of women who seek abortion care do so in the first trimester of pregnancy.  Likewise, the great majority of second-trimester abortions occur in the early weeks of the second trimester.  Still, a significant number of women in Texas seek abortions between 14 and 22 weeks, as measured from the first day of the woman's last menstrual period ("LMP").

30.     Women seek abortion during the second trimester for the same reasons they seek earlier procedures, including a variety of personal and medical reasons.  Women may also seek abortion during the second trimester because they have been delayed due to late confirmation of pregnancy or difficulty gathering funds to pay for the procedure or organizing the logistics of necessary travel, time off work and child care.  In addition, the identification of major anatomic or genetic anomalies in the fetus most commonly occurs in the second trimester, and women may choose to terminate a pregnancy for that reason.

31.     Women face many obstacles accessing abortion care in Texas.

32.     Many abortion patients are low income, and struggle to make arrangements for, and absorb the cost of, missed work, childcare if they have children, which most do, transportation to and from the clinic, and any needed hotel rooms.  These burdens are increased by Texas's mandate that a woman make an additional, unnecessary trip to a physician, to receive state-mandated counseling and an ultrasound in person, and then delay at least 24 hours before making another trip to obtain her abortion.

33.     As a result of existing Texas regulations, an abortion of a fetus age 16 weeks gestational age or more may be performed only at an ambulatory surgical center or hospital licensed to perform the abortion.  Tex. Health & Safety Code § 171.004.  In addition, abortions

are prohibited after 20 weeks post-fertilization, except in narrow circumstances.  Tex. Health &
Safety Code § 171.044.

34.     S.B. 8 is the latest in a long string of attempts by Texas to place burdensome,
medically unnecessary restrictions on women's access to abortion.  In 2003, Texas instituted a 24-
hour mandatory delay between a woman providing informed consent for an abortion and her
obtaining the procedure.  In 2011, Texas amended its informed consent requirements regarding
abortion to include a mandatory ultrasound at least 24 hours before the procedure (or two hours
for patients who live at leave 100 miles from the nearest licensed abortion facility).  In June of
2016, the United States Supreme Court struck down two provisions of another Texas anti-abortion
law, because the burdens imposed by the restrictions outweighed any benefits the requirements
advanced.  *Whole Woman's Health v. Hellerstedt*, __ U.S. ___, 136 S. Ct. 2292 (2016).  Just four
days after the Supreme Court issued its decision, the Texas Department of State Health Services
published proposed regulations eliminating the typical, medically appropriate methods of disposal
for embryonic and fetal tissue, and instead requiring healthcare facilities to dispose of all such
tissue from abortion and miscarriage by burial or cremation.  This court granted a preliminary
injunction blocking the amendments from taking effect, noting that the circumstances suggested
that "the actual purpose of the Amendments is to limit abortion access in Texas."  *Whole Woman's
Health v. Hellerstedt*, No. 1:16-cv-01300-SS, __ F. Supp. 3d ___, 2017 WL 462400 (W.D. Tex.
Jan. 27, 2017), *appeal docketed*, No. 17-50154 (5th Cir. Mar. 1, 2017).

35.     The Texas legislature introduced more than fifty restrictive abortion bills during the
2017 regular session.  S.B. 8 as originally drafted and debated was an unrelated abortion restriction.
The D & E ban and other restrictions were attached as last minute amendments, without committee
hearings and with scant debate.

**The Ban on D & E Procedures**

36.     The challenged provisions of S.B. 8 criminalize the performance of what the statute calls a "dismemberment abortion."  Although this is not a medical term that is used by physicians or that appears in any medical literature, the definition in the statute clearly prohibits a procedure referred to in the medical profession as dilation and evacuation or "D & E."  D & E, which can be performed in an outpatient setting, is the safest and most common method of abortion after approximately 15 weeks of pregnancy.

37.     S.B. 8 defines "dismemberment abortion" as follows:

> "[D]ismemberment abortion" means an abortion in which a person, with the purpose of causing the death of an unborn child, dismembers the living unborn child and extracts the unborn child one piece at a time from the uterus through the use of clamps, grasping forceps, tongs, scissors, or a similar instrument that, through the convergence of two rigid levers, slices, crushes, or grasps, or performs any combination of those actions on, a piece of the unborn child's body to cut or rip the piece from the body.  The term does not include an abortion that uses suction to dismember the body of an unborn child by sucking pieces of the unborn child into a collection container.  The term includes a dismemberment abortion that is used to cause the death of an unborn child and in which suction is subsequently used to extract pieces of the unborn child after the unborn child's death.

S.B. 8, creating Tex. Health & Safety Code § 171.151.

38.     The only exception to S.B. 8's prohibition on D & E procedures is for instances in which a "medical emergency" exists.  Although not further defined within the subchapter creating the D & E ban, "medical emergency" is defined elsewhere in the same chapter of the Texas Health and Safety Code to mean:  "a life-threatening physical condition aggravated by, caused by, or arising from a pregnancy that, as certified by a physician, places the woman in danger of death or a serious risk of substantial impairment of a major bodily function unless an abortion is performed."  Tex. Health & Safety Code § 171.002(3).

39.     Violation of the ban is a "state jail felony," S.B. 8, creating § 171.153, punishable by a minimum of 180 days to a maximum of two years in jail, and a fine of up to $10,000.  Tex. Penal Code § 12.35(a)-(b).

40.     S.B. 8 also separately bans a distinct variant of the D & E procedure, known by the medical term dilation and extraction ("D & X"), a procedure previously used by a minority of physicians later in the second trimester.  S.B. 8, creating §§ 171.101-106.  This prohibition, which purports to ban so-called "partial-birth" abortions, is substantially similar to a federal prohibition that is currently in effect, 18 U.S.C. § 1531, and is not challenged here.

**The Impact of the D & E Ban on Women Seeking Second-Trimester Abortions**

41.     S.B. 8 bans dilation and evacuation abortion, or D & E, the safest and most common abortion method used after approximately 15 weeks of pregnancy.  Enforcement of the ban would threaten women's bodily autonomy, health, and access to abortion in Texas.

42.     In the first trimester of pregnancy, abortions are performed using medical or instrumental (also called surgical) means.  Medication abortions, which are typically available up to 10.0 weeks LMP, involve the ingestion of two medications to terminate the pregnancy, in a process similar to a miscarriage.  Instrumental abortions in the first trimester are performed using a suction device to aspirate (or empty) the uterus.

43.     For all instrumental abortions, before the physician can remove the products of conception, it is necessary to dilate the cervix to allow the passage of instruments.  Adequate cervical preparation is critical to ensuring the procedure is performed safely and without trauma to the cervix.  Dilation can be accomplished by a variety of means, depending on the patient and the length of the pregnancy.  Methods include the use of mechanical dilators, ingestion of

medications, and, after the first trimester, can include the insertion of osmotic dilators into the cervix, which absorb moisture and gradually expand.

44.     Starting at approximately 14.0 weeks LMP, physicians may use a combination of suction and forceps or other instruments to remove the fetus and other products of conception from the uterus.  Because the cervical opening is smaller than the fetus, separation or disarticulation of fetal tissue usually occurs as the physician uses instruments to bring the tissue through the cervix. A procedure in which the physician uses instruments, alone or in conjunction with suction, to empty the uterus in this manner is known as D & E.

45.     D & E is safely performed as an outpatient procedure throughout the second trimester of pregnancy.  The evacuation phase takes approximately 10 minutes.

46.     Other than D & E, the only other medically-proven abortion method available throughout the second trimester is induction abortion, where a physician uses medication to induce labor and delivery of a non-viable fetus.  Induction of labor accounts for only about 5% of second-trimester abortions nationally.  Induction abortions must be performed in a hospital or similar facility that has the capacity to monitor a patient overnight.  Induction abortions can last anywhere from five hours to three days; are extremely expensive; entail more pain, discomfort, and recovery time for the patient—similar to that of a woman giving birth—than D & E; and are medically contraindicated for some patients.

47.     Many Texas hospitals prohibit abortions except in very limited circumstances and therefore the option of second-trimester induction, in addition to the added time, expense, and physical and emotional burdens, is not available to most women in Texas.

48.     The D & E ban does not apply in instances in which the physician—through a separate procedure—causes fetal demise prior to starting the evacuation phase of the D & E.  This does not, however, materially narrow the scope of the ban or lessen its impact.

49.     Before 18 weeks LMP, there is no reliable, safe, studied, or medically appropriate way for Plaintiffs to attempt to cause fetal demise.  Attempting to do so would be difficult and would impose risks with no medical benefit to the patient, and is virtually untested, has unknown risks and uncertain efficacy.  Requiring demise in every instance would be outside the standard of care and would in some circumstances amount to experimental procedures.

50.     Starting at 18 or 20 weeks LMP, some, but not all, physicians in Texas use a hypodermic needle to inject a drug called digoxin transabdominally (through the abdomen into the uterus) or transvaginally (through the vaginal wall or through the cervix) to attempt to cause fetal demise.

51.     Because digoxin can take up to 24 hours to cause fetal demise, even if such injections were feasible and medically appropriate prior to 18 weeks LMP—which they are not— its use in the early second trimester would require women to make an additional and unnecessary trip to the clinic because, but for the need for demise, the physician could achieve adequate dilation and complete the procedure in one visit.  This extra trip would be a tremendous burden on patients, compounding the burdens patients already face, and introducing untested and unnecessary health risks.

52.     The physicians who use digoxin to attempt to induce fetal demise do so for a variety of reasons, including out of fear of prosecution under the federal ban on so-called partial-birth abortions, now also prohibited by S.B. 8, creating Texas Health and Safety Code §§ 171.101-106. While some physicians feel that demise makes the procedure easier because the fetal tissue may

13

soften as a result of demise, published data show that use of digoxin provides no clear medical benefit to the patient. According to the American Congress of Obstetricians and Gynecologists: "No evidence currently supports the use of induced fetal demise to increase the safety of second-trimester medical or surgical abortion." Am. Coll. Obstetricians & Gynecologists, *Practice Bulletin Number 135: Second-Trimester Abortion* (June 2013).

53.     Risks associated with digoxin injections include infection, delivery of the fetus outside of a healthcare facility, and an increased risk of hospitalization. The procedure, which involves injection using a long needle, can also be painful and cause severe anxiety for many women. In addition, the procedure is more difficult for some women due to anatomical characteristics, such as obesity, fibroids, and cesarean scars from previous deliveries, and more risky for women with certain heart conditions should the digoxin enter the maternal circulation.

54.     Digoxin also sometimes fails to cause fetal demise in the expected period of time after the injection. If the D & E ban were to go into effect, a second injection would be necessary in this situation, but this is unstudied and is not accepted medical practice for the vast majority of patients, who are already adequately dilated and otherwise ready to proceed with the procedure. A second injection would add yet another day to the procedure, increase the risk of infection and extramural delivery, particularly for patients already well dilated, as well as increase the burdens on women seeking second-trimester abortions, with no medical justification. Physicians who currently use digoxin rarely, if ever, administer second injections of digoxin.

55.     It is not clear whether the medical emergency exception provides physicians with protection from criminal prosecution if faced with the scenario in which digoxin has failed to cause demise within the expected time, but it is in the patient's best medical interest to complete the procedure, because it is unlikely that a physician could certify, on pain of criminal penalty, that

the condition, although serious, comes within the extremely narrow definition of medical emergency.  Tex. Health & Safety Code § 171.002(3).

56.     There are no other reliable, safe, and available methods of attempting to cause fetal demise in the outpatient setting.  An injection of KCl (potassium chloride) directly into the fetal heart does effectively cause demise, but requires years of specialized training and hospital-grade equipment, and can be fatal to the woman if administered incorrectly.

57.     Moreover, current Texas law prohibits the off-label prescription of an "abortion-inducing drug."  Tex. Health & Safety Code § 171.063.  This law applies to the provision of abortions using medications, rather than abortions using instruments.  However, on its face, the law could also apply to the use of any substance, including digoxin or KCl, to cause fetal demise prior to abortion because neither of these drugs are labeled for that purpose.  Out of an abundance of caution, some Texas physicians do not use digoxin to cause fetal demise for fear of prosecution under this provision.

58.     Nor is umbilical cord transection, where a clinician attempts to grasp and divide the umbilical cord to cause demise, a realistic means of avoiding criminal prosecution under the D & E ban.  Umbilical cord transection can be very difficult, especially at earlier gestational ages, and it may not be possible for every patient.  A physician cannot know ahead of time if he or she will be able to safely grasp the cord, but at that point the procedure is underway and it exposes the woman to increased risks, such as risk of infection, not to complete the procedure.  Umbilical cord transection also exposes patients to increased risk of uterine perforation, cervical injury, and bleeding; and would prolong the D & E, also increasing risks.  Additionally, there is a risk that a physician attempting to grasp the cord will instead grasp fetal tissue, and therefore violate, rather than circumvent, the D & E ban.

59.     The safest and most efficacious way for a physician to perform a D & E procedure or to attempt to induce fetal demise if the physician believes there are reasons to do so, is by using the techniques with which the physician is familiar and comfortable, based on his or her training and experience.

60.     Before starting a D & E, it is impossible to know whether an attempt to cause fetal demise will be possible or successful.  Thus, the effect of S.B. 8 is that Plaintiffs may be prevented from starting any D & E because they know they may not be able to complete the procedure without violating the D & E ban.

61.     S.B. 8 therefore imposes a criminal ban, and significant penalties, on the performance of D & E, the safest and most common method of second-trimester abortion after approximately 15 weeks of pregnancy, leaving physicians with no reasonable alternatives by which to continue providing this abortion care.

62.     Enforcement of the D & E ban would irreparably harm women seeking second-trimester abortions by denying them access to the safest and most common method of abortion after approximately 15 weeks of pregnancy.  Even if limited access remains available, the ban forces women seeking second-trimester abortions to undergo more complex and risky procedures, including compelling them to undergo painful, untested, and invasive medical procedures, in order to access their constitutional right to abortion.

63.     Enforcement of the D & E ban would also subject Plaintiffs' patients to irreparable harm from the violation of their constitutional rights.

## CLAIMS FOR RELIEF

### COUNT I

**(Due Process—Undue Burden on Plaintiffs' Patients' Right to Liberty and Privacy)**

64.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 63.

65.     By banning the safest and most common method of abortion used after approximately 15 weeks of pregnancy, the D & E ban violates Plaintiffs' patients' right to liberty and privacy as guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution because it imposes an undue burden on women seeking to terminate a pregnancy before viability.

### COUNT II

**(Due Process—Plaintiff's Patients' Right to Bodily Integrity)**

66.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 65.

67.     By forcing women to undergo additional, invasive, and potentially painful procedures to obtain a second-trimester abortion or continue a pregnancy, the D & E ban violates Plaintiffs' patients' right to bodily integrity as guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

### INJUNCTIVE RELIEF

68.     The D & E ban subjects Plaintiffs' patients to irreparable harm for which there exists no adequate remedy at law, and threatens Plaintiffs with substantial penalties for providing constitutionally protected abortion care.

17

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs ask this Court:

A.  To issue a preliminary injunction and permanent injunction restraining Defendants and their successors in office from enforcing the D & E ban, and specifically those provisions of S.B. 8 creating Texas Health and Safety Code §§ 171.151-154.

B.  To enter a judgment declaring that the D & E ban, and specifically those provisions of S.B. 8 creating Texas Health and Safety Code §§ 171.151-154, violate the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

C.  To award Plaintiffs their attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

D.  To grant such other and further relief as the Court deems just and proper.


Dated: August 18, 2017


Respectfully submitted,


 /s/ Patrick J. O'Connell
Patrick J. O'Connell
Texas Bar No. 15179900
Law Offices of Patrick J. O'Connell PLLC
2525 Wallingwood, Bldg. 14
Austin, Texas 78746
(512) 852-5918
pat@pjofca.com

*Attorney for all Plaintiffs*

Janet Crepps*
Molly Duane*
Center for Reproductive Rights
199 Water St. 22nd Floor
New York, NY 10038
(864) 962-8519 (Janet Crepps)
(917) 637-3631 (Molly Duane)
jcrepps@reprorights.org
mduane@reprorights.org

J. Alexander Lawrence*
Morrison & Foerster LLP
250 W. 55th Street
New York, NY 10019
(212) 336-8638
alawrence@mofo.com

*Attorneys for Plaintiffs Whole Woman's Health,
Alamo City Surgery Center, Southwestern Women's
Surgery Center, Nova Health Systems, Curtis Boyd,
M.D., Robin Wallace, M.D., Bhavik Kumar, M.D., and
Alan Braid, M.D.*

Melissa Cohen*
Planned Parenthood Federation of America
123 William Street
New York, NY 10038
(212) 261-4649
melissa.cohen@ppfa.org

*Attorney for Plaintiffs Planned Parenthood Center
For Choice, Planned Parenthood of Greater Texas
Surgical Health Services, and Planned Parenthood
South Texas Surgical Center*

*Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I certify that on this 18th day of August 2017, I electronically filed a copy of the

above document with the Clerk of the Court using the CM/ECF system.


           *_/s/ Patrick J. O'Connell_____*
Patrick J. O'Connell