**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| WHOLE WOMAN'S HEALTH, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CAUSE NO. 1:17-CV-00690-LY |
| | § | |
| KEN PAXTON, et al., | § | |
| | § | |
| | § | |
| Defendants. | § | |

**DEFENDANT ATTORNEY GENERAL KEN PAXTON'S
MOTION TO COMPEL DISCOVERY RESPONSES**

Plaintiffs' pleadings contain allegations regarding the accessibility of abortion in Texas and the safety, efficacy, and feasibility of inducing fetal demise prior to performing surgical abortions in order to comply with S.B. 8, placing these facts directly at issue. Despite their admission that some of the fetal demise methods they question are already used by Plaintiffs and other physicians in Texas, Plaintiffs refuse to provide evidence about their own abortion practices—the very practices they allege will be unconstitutionally limited. Of course, much of this information is exclusively in the hands of Plaintiffs.

The information sought by Defendant Attorney General Ken Paxton is necessary for the Court's assessment of the likelihood of Plaintiffs' success on the merits of their claims, as it goes directly to the veracity of the allegations in the Complaint. The Court should compel the Plaintiffs to answer Defendant's reasonable and limited requests.

1

## DISCOVERY AT ISSUE[1]

On July 31, 2017, attorneys for Plaintiffs and Defendant Paxton met and conferred regarding discovery and a scheduling order in this case. On this date, Defendant's counsel provided draft interrogatories and requests for production to Plaintiffs' counsel. On August 1, 2017, Defendant Paxton formally served Plaintiffs with his First Interrogatories and First Requests for Production. *See* Exhs. A, B. The same day, counsel for Plaintiffs and Defendants conferred again regarding discovery and scheduling, including Defendant's written discovery requests. Plaintiffs indicated in this conference that they generally objected to the written discovery but did not provide any specific objections at that time. On August 16, 2017, Defendant Paxton served Rule 30(b)(6) deposition notices on seven of the Plaintiffs. Exh. C. The topics for the depositions related to the same information requested in Defendant Paxton's written discovery requests. *Id.*

On August 18, 2017, Plaintiffs served objections and responses to Defendant's requests in which they largely lodged boilerplate objections and stated that they "will meet and confer regarding th[e] request." Exhs. D, E. With respect to the few discovery requests to which Plaintiffs agreed to provide responses at a later, unspecified date, the proposed responses were generally limited in scope without justification. On August 22, 2017, Plaintiff Whole Woman's Health failed to appear at the noticed Rule 30(b)(6) deposition, and the other Plaintiffs failed to appear at the other depositions noticed between August 23-30, despite Plaintiffs' failure to request

---

[1] Defendant Paxton's First Set of Joint Interrogatories are attached as Exhibit A, and Plaintiffs' responses thereto are attached as Exhibit E. Defendant Paxton's First Set of Joint Requests for Production are attached as Exhibit B, and Plaintiffs' responses thereto are attached as Exhibit D. Defendant's Rule 30(b)(6) deposition notices are attached as Exhibit C. The Certificate of Non-Attendance for the 30(b)(6) deposition is attached as Exhibit F.

a protective order. Exh. F. On August 22, 2017, the parties conferred and were unable to resolve the issues that are the subject of this motion to compel.

## STANDARD OF LAW

Pursuant to Rule 37(a)(3) of the Federal Rules of Civil Procedure, a party seeking discovery may move for an order compelling a discovery response against another party when the latter has failed to answer an interrogatory submitted under Rule 33 or failed to produce documents requested under Rule 34. *See* Fed. R. Civ. P. 37(a)(3)(iii)-(iv). "The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable." *Fath v. Tex. Dep't of Transp.*, No. 1:16-CV-234-LY, 2016 WL 7442870, at *1 (W.D. Tex. Oct. 19, 2016) (citing *McLeod, Alexander, Powel & Apffel, P.C., v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). The Court should consider the scope of permissible discovery as defined by Rule 26(b)(1), including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). In the event a motion to compel is granted or responses are provided after filing of said motion, a "court *must* . . . require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).

## DISCUSSION

### A. Defendant Paxton's limited discovery requests seek information that is relevant and discoverable.

Defendant issued narrowly tailored discovery requests to facilitate the Court's evaluation of emergency relief and ultimate relief Plaintiffs seek. The disputed discovery requests generally fall into seven categories.

3

1. **Fetal Demise Methods/Procedures.**[2] These requests relate to Plaintiffs' use of digoxin, potassium chloride, and umbilical cord transection to bring about fetal demise prior to performing a D&E. Plaintiffs allege that they cannot administer digoxin or perform an umbilical cord transection to comply with S.B. 8. Pls.' Am. Compl. ¶¶ 50-55, 58. But Plaintiffs contradict this assertion by admitting that at least some doctors already use digoxin, Pls.' Am. Compl. ¶¶ 50, 52, and they do not deny that umbilical cord transaction may have been used as well. The Court cannot evaluate S.B. 8's effects without understanding the extent to which Plaintiffs' past or current practices already comply with S.B. 8. Plaintiffs' offer to provide only current protocols for digoxin use would not provide the level of detail needed to assess whether digoxin use is a viable alternative to dismemberment abortions.

2. **Abortion and Fetal Demise Complications.**[3] These requests concern any potential complications that could arise from the use of digoxin to cause fetal demise. Plaintiffs have called into question the safety of causing fetal demise prior to a D&E, *see* Pls.' Am. Compl. ¶ 49, yet Defendant readily found academic literature supporting the use of digoxin, potassium chloride, and umbilical cord transection, *see* Defs.' Opp. to Pls.' Mot. for TRO, at 13-15. Plaintiffs must explain this disparity by specifically identifying the instances, if any, where any alleged risks have been realized. This Court cannot evaluate the likelihood of Plaintiffs' success on the merits without being able to assess the veracity of their allegations.

3. **Policies, Processes, and Procedures.**[4] Defendant has requested information regarding Plaintiffs' practices for performing abortions, administering digoxin, obtaining informed consent from their patients, and the use of intent statements in performing abortions. But the precise methods used by Plaintiffs are

---

[2] Interrogatory Nos. 5-6, 9-10; Request for Production Nos. 5-6, 9-10.
[3] Interrogatory Nos. 14-15, 18; Request for Production Nos. 14-15, 17, 30.
[4] Request for Production Nos. 29, 31-32, 34-35.

central to the applicability of the law. The information given to patients regarding D&Es, fetal demise, and digoxin is highly probative of Plaintiffs' allegations regarding the role of patient choice and autonomy. The use of intent statements to document the methods of abortion used is probative of the law's applicability.

      4.    **Training Materials, Policies, and Educational Materials.**[5] Defendant has requested information related to the use of digoxin to cause fetal demise. Plaintiffs' level of familiarity, training, and experience with digoxin is directly relevant to their allegations that digoxin may be difficult to administer in some cases. *See* Pls.' Am. Compl. ¶ 53.

      5.    **Abortion Procedures.**[6] Defendant Paxton requested information related to the identity of Plaintiffs' abortion providers (or any other individuals with knowledge of Plaintiffs' abortion procedures), as well as the number of abortions each physician has performed. This baseline information is necessary to understand not only which providers Plaintiffs contend will be affected by SB 8, but also the fraction of procedures that are arguably implicated by the dismemberment ban. *Cf. Gonzales v. Carhart*, 550 U.S. 124, 167-68 (2007) (noting that facial challenges to abortion-related legislation must fail unless the law "would be unconstitutional in a large fraction of relevant cases"). Moreover, Plaintiffs admit that some of their physicians already use digoxin or other methods of causing fetal demise, Pls.' Am. Compl. ¶¶ 50, 52, so these physicians have knowledge that is relevant to the veracity of Plaintiffs' allegations. Plaintiffs' offer to provide the names of *only current second-trimester abortion providers* unjustifiably limits the scope of the request. Any of Plaintiffs' physicians will have relevant knowledge of the issues raised by Plaintiffs' claims, even if they have subsequently changed their practice.

---

[5] Request for Production No. 33.
[6] Interrogatory Nos. 1-4, 20, 23; Request for Production Nos. 1-4, 20, 27.

Similarly, Defendant has asked for information regarding specific types of procedures that Plaintiffs use to perform abortions. S.B. 8 only applies to procedures where the primary method of removing the fetus is the use of forceps or a similar instrument to extract the fetus piece by piece. SB 8 specifically excepts procedures where suction is the primary method used to extract the fetus. Defendant requests a limited amount of data regarding these procedures in order to understand which procedures are implicated by the dismemberment ban and which are not.

6.      **Clinic Operations and Recordkeeping.**[7] Defendant has requested information related to digoxin procurement, clinic operations, and record keeping. Plaintiffs' past and current use of digoxin is relevant to their claims, and records demonstrating how much digoxin they have purchased will show how prevalent its use has become. Likewise, the requested information related to clinic operations and record keeping is necessary to understand the scope of discoverable information that may exist in Plaintiffs' custody or control. Furthermore, Plaintiffs' communications with Planned Parenthood Federation of America are probative of every issue in the case, as the Federation sets policies and procedures for the provision of abortion for each affiliate (including the Planned Parenthood plaintiffs), and these affiliates provide a large proportion of abortions nationwide.

7.      **Specific Allegations Contained in Complaint.**[8] Defendant has requested information regarding several specific allegations contained in the Complaint and Amended Complaint. Plaintiffs' relevance-based objections to these requests strain credulity.

**Paragraph 50.** Plaintiffs allege that "some, but not all, physicians in Texas use a hypodermic needle to inject a drug called digoxin transabdominally . . . or

---

[7] Interrogatory Nos. 21-22; Request for Production Nos. 21-26, 36.
[8] Interrogatory Nos. 11-13, 16-17, 19-20; Request for Production Nos. 11-13, 16, 18-20, 28.

transvaginally . . . to attempt to cause fetal demise." Pls.' Am. Compl. ¶ 50. Such use directly contradicts Plaintiffs' allegations that digoxin is neither safe nor effective, and Defendant is entitled to the identities of these physicians to further investigate their use of digoxin.

**Paragraph 51.** Plaintiffs allege that some physicians can perform a complete D&E procedure in one visit, and that the use of digoxin would require an additional trip to the clinic. Pls. Am. Compl. ¶ 51. Defendant anticipates that the number of visits to a clinic required for a D&E will be a contested factual issue, and Plaintiffs' allegations directly relate to the Court's analysis of the purported undue burden.

**Paragraph 52.** Plaintiffs allege that "some physicians feel that demise makes the procedure easier because the fetal tissue may soften as a result of demise." Pls.' Am. Compl. ¶ 52. This admission directly contradicts Plaintiffs' other allegations that there is no medical benefit to the mother in causing fetal demise prior to dismemberment. *See* Pls.' Am. Compl. ¶ 49.

**Paragraph 54.** Plaintiffs allege that digoxin injections sometimes fail, but they also admit that physicians have administered second injections in at least some instances. *See* Pls.' Am. Compl. ¶ 54. The impact of the law cannot be assessed without information regarding the instances, if any, in which digoxin has failed to cause fetal demise and second injections have been administered.

**Paragraph 57.** Plaintiffs contend that some physicians fear that they would violate other provisions of Texas law if they use digoxin to cause fetal demise. Pls.' Am. Compl. ¶ 57. This allegation is directly in conflict with Plaintiffs' admission that digoxin is already in use by physicians at certain gestational ages to avoid violating the federal partial-birth-abortion ban. *See* Pls.' Am. Compl. ¶ 52.

**B. Plaintiffs' general objections to Defendant Paxton's discovery requests are meritless, and Plaintiffs failed to even attempt to produce adequate responses to Defendant's requests.**

Plaintiffs generally object to providing the specific, procedure-related information requested. But this information is relevant to identifying particular evidence of the extent to which the Plaintiffs already comply with S.B. 8, and any evidence substantiating Plaintiffs' allegations regarding the purported risks of the various methods of inducing fetal demise. At the time of the August 22 meet and confer—more than three weeks after the discovery requests were served—Plaintiffs' counsel did not know what, if any, of this information Plaintiffs already kept in reasonably accessible form, nor were Plaintiffs prepared to discuss potential modifications of the request based on the accessibility of procedure information. Plaintiffs' counsel also admitted that they had not even asked their clients for their responses to these requests.

Instead, Plaintiffs summarily asserted that providing such information would require a chart-by-chart review of procedures, which they refused to do, and Plaintiffs' counsel also indicated that they would refuse to produce the charts for second-trimester surgical abortions to Defendant Paxton, even under an agreed protective order, when Defendant's counsel offered to review the records themselves. For Plaintiffs to prevail on their objection that production of this information is unduly burdensome, they must *affirmatively* demonstrate the nature and extent of this burden, *but Plaintiffs made no genuine attempt to evaluate this burden before asserting boilerplate objections*. Plaintiffs also admitted they made no attempt to partially respond to Defendant's requests by asking physicians who work at their clinics and the physician Plaintiffs if they are personally aware of any of the requested information.

Plaintiffs' objection to providing any information regarding physicians who do not currently work for them or provide information about practices prior to 2016 is

meritless. Although information prior to 2011 is relevant to this case, as explained above, Defendant Paxton has reasonably limited the scope of this discovery to the past six years. Plaintiffs' objection that the "prejudice of the disclosure of [certain] identifying information . . . outweighs any probative value [of the evidence sought]" is also meritless. The prejudice to probative value balancing test is implicated by an admissibility objection under the Federal Rules of Evidence; the prejudicial nature of evidence has nothing to do with whether such evidence is discoverable.

## CONCLUSION

Based on the foregoing, the Court should grant the instant motion and compel Plaintiffs to provide full and complete responses to Defendant's requests.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

DARREN MCCARTY
Special Counsel for Civil Litigation
Texas Bar No.  24007631

ANGELA V. COLMENERO
Chief, General Litigation Division

/s/ Andrew B. Stephens
ANDREW B. STEPHENS
Texas Bar No. 24079396
ADAM ARTHUR BIGGS
Texas Bar No. 24077727
SUMMER R. LEE

9

Texas Bar No. 24046283
EMILY ARDOLINO
Texas Bar No. 24087112
BENJAMIN S. WALTON
Texas Bar No. 24075241
Assistant Attorneys General
General Litigation Division

HEATHER GEBELIN HACKER
Assistant Solicitor General
Texas Bar No. 24103325

JOHN S. LANGLEY
Assistant Attorney General
Administrative Law
Texas Bar No. 11919250

Office of the Attorney General
300 West 15th Street
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2120 (phone)
(512) 320-0667 (fax)

Attorneys for Defendant Ken Paxton

## CERTIFICATE OF SERVICE

I certify that on August 28, 2017, this document was served through the Court's CM/ECF Document Filing System or through electronic mail, upon the following counsel of record:

Patrick J. O'Connell
Law Offices of Patrick J. O'Connell PLLC
2525 Wallingwood Dr., Bldg. 14
Austin, TX 78746
(512) 222-0444
pat@pjofca.com

Janet Crepps
Molly Duane
Center for Reproductive Rights
199 Water St. 22nd Floor
New York, NY 10038
(864) 962-8519
(917) 637-3631
jcrepps@reprorights.org
mduane@reprorights.org

J. Alexander Lawrence
Morrison & Foerster LLP
250 W. 55th Street
New York, NY 10019
(212) 336-8638
alawrence@mofo.com

Melissa Cohen
Planned Parenthood Federation of America
123 William Street
New York, NY 10038
(212) 261-4649
melissa.cohen@ppfa.org

Christopher D. Hilton
300 West 15th Street
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2120 (phone)
(512) 320-0667 (fax)

/s/ Andrew B. Stephens
ANDREW B. STEPHENS
Assistant Attorney General