# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| WHOLE WOMAN'S HEALTH, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No.1:17-cv-00690-LY |
| | § | |
| KEN PAXTON, Attorney General of | § | |
| Texas, et al., | § | |
| | § | |
| Defendants. | § | |

---

**DEFENDANT KEN PAXTON'S FIRST SET OF JOINT REQUESTS FOR**
**PRODUCTION**

---

TO:    Plaintiffs Whole Woman's Health, Planned Parenthood Center for Choice, Planned Parenthood of Greater Texas Surgical Health Services, Planned Parenthood South Texas Surgical Center, Alamo City Surgery Center PLLC d/b/a Alamo Women's Reproductive Services, Southwestern Women's Surgery Center, and Nova Health Systems, Inc. d/b/a Reproductive Services, each on behalf of itself, its staff, physicians and patients, and Curtis Boyd, M.D., Jane Doe, M.D., Bhavik Kumar, M.S., and Alan Braid, M.D., each on behalf of himself and his patients, by and through their attorneys of record, Patrick J. O'Connell, 2525 Wallingwood, Bldg 14, Austin, Texas 78746, (512) 852-5918, pat@pjofca.com.

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendant Ken Paxton, Attorney General of Texas through his undersigned counsel, requests that you produce the following documents in accordance with the Definitions and Instructions set forth below at the office of State Defendants' counsel, Office of the Attorney General of Texas, 300 W. 15th Street, 11th Floor, P.O. Box 12548, Capitol Station, Austin, Texas 78711-2548, **within 5 days after service** of same.

## DEFINITIONS

1.      "Plaintiff," "Plaintiffs," "you," and "your" refer to each and every Plaintiff in the above-captioned matter, jointly and severally, collectively and individually, including Whole Woman's Health, Planned Parenthood Center for Choice, Planned Parenthood of Greater Texas Surgical Health Services, Planned Parenthood South Texas Surgical Center, Alamo City Surgery Center PLLC d/b/a Alamo Women's Reproductive Services, Southwestern Women's Surgery Center, and Nova Health Systems, Inc. d/b/a Reproductive Services, including their employees, officers, agents, and successors, and Curtis Boyd, M.D., Jane Doe, M.D., Bhavik Kumar, M.S., and Alan Braid, M.D., and their employees and agents.

2.      "Defendant" refers to Ken Paxton, Attorney General of Texas, in his official capacity, as well as his employees, agents, and successors.

3.      The terms "Dilation and Evacuation," "D&E Procedure," and "D&E" refer to that method of performing an abortion, at any Post-fertilization Age, where forceps, or a similar instrument, is the primary method used to extract a fetus, piece by piece, and where suction may or may not be used to extract fluids or some fetal parts.

4.      The terms "Dilation and Curettage," "D&C Procedure," and "D&C" refer to that method of performing an abortion, at any Post-fertilization age, where suction is the primary method used to extract a fetus and where forceps, or a similar instrument, may or may not be used to extract some fetal parts.

5.      The term "LMP" refers to that method of determining the age of an

unborn child that counts from the first day of the mother's last menstrual period.

6. The term "Post-fertilization Age" refers to that method of determining the age of an unborn child that counts from the approximated date of fertilization, which is generally two weeks less than the LMP age of the fetus.

7. A request that asks you to produce documents that identify an individual, physician, or business is requesting documents that, at a minimum, show the individual's, physician's, or business's name; business address; and business phone number.

8. A request that asks you to produce documents that identify a procedure is requesting documents that show, at a minimum, the date of the procedure; the patient's first and last initials; the name of the treating physician(s); the Post-fertilization Age (as herein defined); and the name of the facility, clinic, office, ambulatory surgical center, or other location where the procedure took place.

9. "Concerning" shall mean having any relationship or connection to, regarding, relating, being connected to, commenting on, responding do, addressed to, sent to, containing, evidencing, showing, memorializing, describing, analyzing, reflecting, pertaining to, comprising, constituting, or otherwise establishing any reasonable, logical, or causal connection.

10. "Document" and "documents" are synonymous in meaning and equal in scope to the usage of the terms as defined in Federal Rule of Civil Procedure 34(a)(1)(A) and shall include all items subject to inspection and copying under those Rules, including any original, reproduction, copy, or draft of any kind of written or

documented material, stored in any medium, including but not limited to audio and video tapes, correspondence, memoranda, interoffice communications, electronic mail, notes, diaries, calendars, personal digital assistant device entries, contract documents, estimates, vouchers, minutes of meetings, invoices, checks, reports, telegraphs, notes of telephone conversations, notes of oral communications, computer-stored information that is retrievable in any form, writings, drawings, graphs, charts, photographs, and other data compilations, from which information can be obtained, and electronically stored information that is retrievable in any form, or translated if necessary, by Plaintiffs through detection devices into a reasonably usable form, except that neither electronically stored voicemails nor the information stored in the memories of copiers, printers, and fax machines are "documents" under this definition.

11.     "Electronic data" means the original (or duplicate, identical copies when originals are not available) and any non-identical copies of electronic data of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means.  Such data may include, but is not limited to, computer programs (whether private, commercial, or work-in-progress), programming notes or instructions, electronic mail receipts and/or transmittals, output resulting from the use of any software program, including but not limited to word processing documents, spreadsheets, database files, charts, graphs, outlines, electronic mail, operating systems, source code of all types, programming languages, linkers and compilers, peripheral drivers, PIF files, PDF files, batch files, any and all

ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said electronic data is in an active file, deleted file, or file fragment, except as limited by any agreement the parties may reach as to Plaintiffs' obligations to retain electronic data. The term electronic data includes, but is not limited to, any and all information stored on any electronic media, computers, or networks, except that electronic data specifically does not include information stored in the memories of copiers, printers, and fax machines; nor does it include electronically stored voicemails. The term electronic data also includes the file, folder tabs, and/or containers and labels appended to or associated with any physical storage device associated with each such aforesaid original and/or copy. Unless the parties agree otherwise, all electronic data should be provided in native format, including metadata.

12.    "Electronic database" shall mean any database utilized by Plaintiffs to store information, whether such database is procured and maintained by Plaintiffs or provided by a third party.

13.    The singular shall be construed to include the plural, and the plural shall be construed to include the singular, as necessary to bring within the scope of each Request all documents that might otherwise be construed as nonresponsive to the Request.

14.    The connectives "and" and "or" and the phrase "and/or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of each Request all documents that might otherwise be construed as nonresponsive

to the Request. The word "and" shall be construed to mean both "and" and "or," and vice versa, as necessary to bring within the scope of each Request all documents that might otherwise be construed as nonresponsive to the Request.

## INSTRUCTIONS

1.  In responding to these requests, Plaintiffs are required to furnish all responsive documents in their possession, custody, or control, or in the possession, custody, or control of their attorneys, agents, employees, independent contractors, and all other persons acting on behalf of each of them or any of them.

2.  Each document request shall be responded to separately and fully, unless it is in good faith objected to, in which event the reasons for the objection shall be stated with specificity.  If an objection pertains to only a portion of the request, or to a word, phrase, or clause contained therein, Plaintiffs shall state the objection to that portion only and respond to the remainder of the request.

3.  If, in responding to these document requests, Plaintiffs claim any ambiguity in a document request, or in a definition or instruction applicable thereto, Plaintiffs shall not rely upon the ambiguity as a basis for refusing to respond, but shall set forth as part of their response the language deemed to be ambiguous and the interpretation used in responding to the document request.

4.  An original or one copy of each responsive document shall be produced. Any copy of a document that varies in any way from the original or from any other copy of the document, whether by reason of handwritten or other notation, highlighting, underlining, or other marks, or a draft or successive iteration thereof and all modifications thereto, shall constitute a separate document and must be produced, whether or not the original of such document is within Plaintiffs' possession, custody, or control.  If the same document exists in both electronic and

non-electronic format, the electronically maintained document must be produced; provided, if the non-electronically maintained document varies in any way from the electronically maintained document as described above, both the electronically maintained and non-electronically maintained documents shall be produced.

5.      Documents shall be produced as they are kept in the ordinary course of business.  Each document requested is to be produced in its original file folder, file jacket, or cover (or Plaintiffs may, in the alternative, designate in writing the titles of such folder, jacket, or cover with respect to each document).  The individual or department from whose files the document is being produced is to be indicated.

6.      If there are no documents responsive to any particular request, Plaintiffs shall so state in writing.

7.      A request for documents shall be deemed to include a request for all transmittal sheets, cover letters, exhibits, enclosures, and attachments to the documents, in addition to the document itself, without abbreviation or expurgations. Documents attached to other documents or materials shall not be separated unless information is provided sufficient to permit reconstruction of the grouping or context in which the document is maintained in the ordinary course of business.

8.      If the documents requested differ or vary from one office, division, or location to another, the Requests require production of documents for each office, division, or location.

9.      Each document requested shall be produced in its entirety and without redactions, deletions, or excisions, regardless of whether Plaintiffs consider the entire

document to be relevant or responsive to these Requests.

10.    If Plaintiffs refuse to produce any requested document, or part of any requested document, under a claim of attorney-client privilege, work product, or any other privilege, Plaintiffs shall submit, for each document or part of a document withheld, a written statement that:

   a) specifies the privilege or other asserted basis for withholding the document;

   b) describes the nature and general topic of the document;

   c) identifies the persons who prepared the document and any persons to whom the document was sent or disclosed;

   d) identifies any persons who have seen or had possession of the document; and

   e) specifies the dates on which the document was prepared, transmitted, and received.

11.    These document requests are continuing in nature. Any document obtained, created, identified, or located after service of any response to these requests that would have been included in the responses had the document been available or had its existence been known at that time should be produced immediately.

12.    If any document which Plaintiffs would have produced in response to any request was, but is no longer, in Plaintiffs' present possession or subject to their control or is no longer in existence, please identify with respect to each document:

   a) the date of the document;

   b) the title of the document;

   c) the type of document;

   d) description of the subject matter of the document;

e) the name of each person who prepared, received, viewed, or had possession, custody, or control of the document;

f) the date on which the document was destroyed, discarded, or lost;

g) the name of each person who directed that the document be destroyed, who directed that the document be discarded, or who lost the document; and

h) a statement of the reasons for and circumstances under which the document was destroyed, discarded, or lost.

13. Documents not maintained electronically shall be scanned and electronically produced as Adobe .PDF files. Each page of each document shall be individually Bates-numbered. Optical Character Recognition ("OCR") text files and a load file indicating the beginning and ending Bates numbers of each document shall be provided.

14. Plaintiffs shall produce electronically stored documents and files as follows:

a) Documents shall be produced as searchable .pdf files in a print setting of 300 d.p.i., accompanied by:

b) corresponding database load files in .DAT, .CSV, or .TXT format, containing at a minimum DOCID and path to the image;

c) corresponding searchable text files in .TXT format;

d) where applicable, corresponding metadata files, to include at a minimum the following fields: (1) beginning/ending document number; (2) beginning/ending attachment range; (3) document type; (4) sent date/time; (5) author(s); (6) recipient(s); (7) CC; (8) BCC; (9) subject/title; (10) custodian; (11) attachment count; (12) file name; and (13) last modified date/time.

e) Spreadsheet documents (Microsoft Excel and similar) shall be produced in their native formats and named after their corresponding beginning Bates number.

f) To the extent that responsive ESI is contained in database files, the parties should promptly identify and discuss the appropriate form of production.

g) If it is infeasible to convert any file (e.g., audio/visual files) to the format described in subsection a, above, Plaintiffs shall produce (i) a "placeholder" image containing the file name of the attachment; (ii) the document in native format; and (iii) information sufficient to link the native-format document with its "placeholder" image.

h) Documents that present imaging or formatting problems (e.g., Microsoft Access or other user databases that cannot feasibly be produced as individual files) shall be promptly identified, and the parties shall meet and confer to attempt to resolve the problems.

i) Plaintiffs shall produce electronically stored documents on DVD, CD, or portable hard drives.

15. State Defendants reserve the right, as to any document produced, to request:

a) that an image be produced in color;

b) that a document be produced in native format;

c) that reasonable technical assistance be provided to enable State Defendants and their attorneys, staff, consultants, and experts to use the electronically stored information; and

d) that additional metadata be provided in addition to the Electronic Document Metadata and E-mail Metadata.

16. These requests seek only documents and other items within any Plaintiff's possession, custody, or control.

17. State Defendants further reserve the right to amend the Instructions after State Defendants have viewed Plaintiffs' production.

18. The relevant time period for these Requests is January 1, 2011, through the time of trial, unless otherwise stated.

## REQUESTS FOR PRODUCTION

Defendant Texas Attorney General Ken Paxton requests that you produce the following:

1. Documents sufficient to identify all of the individuals you list in your answer to Interrogatory No. 1.

2. Documents sufficient to identify the number of abortion procedures performed by each individual listed in Interrogatory No. 1 at each week of Post-fertilization Age during each year since 2011.

3. Documents sufficient to identify each D&C Procedure performed at your facility(ies) or by one of the individuals listed in Interrogatory No. 1 since 2011.

4. Documents sufficient to identify each D&E Procedure performed at your facility(ies) or by one of the individuals listed in Interrogatory No. 1 since 2011.

5. Documents sufficient to identify each procedure, since 2011, in which digoxin was administered or used to attempt to cause fetal demise.

6. Documents sufficient to identify each procedure, since 2011, in which digoxin was administered or used to attempt to cause fetal demise and such administration or use of digoxin failed to cause fetal demise.

7. Documents sufficient to identify each procedure, since 2011, in which potassium chloride was administered or used to attempt to cause fetal demise.

8. Documents sufficient to identify each procedure, since 2011, in which potassium chloride was administered or used to attempt to cause fetal demise and such administration or use of potassium chloride failed to cause fetal demise.

9. Documents sufficient to identify each procedure, since 2011, in which umbilical cord transection was used to attempt to cause fetal demise.

10. Documents sufficient to identify each procedure, since 2011, in which umbilical cord transection was used to attempt to cause fetal demise and such umbilical cord transection failed to cause fetal demise.

11. Documents sufficient to identify each "physician[] in Texas" who has used

"a hypodermic needle to inject a drug called digoxin transabdominally . . . or transvaginally . . . to attempt to cause fetal demise," as referenced in paragraph 50 of Plaintiffs' Complaint.

12. Documents concerning any D&E procedure in which the physician "achieve[ed] adequate dilation and complete[d] the procedure in one visit," as referenced in paragraph 51 of Plaintiffs' Complaint.

13. Documents sufficient to identify each physician in Texas who "feel[s] that demise makes the procedure easier because the fetal tissue may soften as a result of demise," as referenced in paragraph 52 of Plaintiffs' Complaint.

14. Documents you contend support your allegation that complications can arise from the administration or use of digoxin to attempt to cause fetal death.

15. Documents concerning each procedure in which a complication has arisen from the administration or use of digoxin to attempt to cause fetal demise.

16. Documents concerning each procedure in which digoxin "fail[ed] to cause fetal demise in the expected period of time after the injection," as referenced in paragraph 54 of Plaintiffs' Complaint.

17. Documents concerning each D&E procedure in which a patient was contraindicated for the use or administration of digoxin for the purpose of attempting to cause fetal demise.

18. Documents concerning any procedure in which more than one injection of digoxin was administered, as referenced in paragraph 54 of Plaintiffs' Complaint.

19. Documents sufficient to identify each physician in Texas who "do[es] not use digoxin to cause fetal demise for fear of prosecution under [Texas Health & Safety Code § 171.063]," as referenced in paragraph 57 of Plaintiffs' Complaint.

20. Documents sufficient to identify each and every abortion-inducing drug, as defined in Texas Health & Safety Code § 171.061(2), that you have ever given, sold, dispensed, administered, provided, or prescribed in a manner that is not authorized by the "final printed label" approved by the United States Food and Drug Administration, as defined in Texas Health & Safety Code § 171.061(3).

21. Documents sufficient to identify all individuals or business from whom you

have purchased digoxin since 2011.

22. Documents concerning any purchases of digoxin by you or your affiliates, as applicable or by any other individual identified in the documents responsive to Request No. 1.

23. Documents concerning communications between you or your employees and Planned Parenthood Federation of America concerning Senate Bill 8.

24. Documents concerning communications between you or your employees and Planned Parenthood Federation of America concerning digoxin.

25. Documents concerning communications between you or your employees and Planned Parenthood Federation of America concerning dismemberment abortion laws or regulations.

26. Documents identifying the total amount of money that you have spent purchasing digoxin during each year since 2011.

27. Documents sufficient to identify each individual with knowledge of the abortion procedures used at your facilities, clinics, offices, ambulatory surgical centers, or other locations, who was not otherwise identified in response to Interrogatory No. 1.

28. Documents concerning any D&E procedure in which an individual has "administer[ed] [a] second injection[] of digoxin" in an attempt to cause fetal demise, as referenced in paragraph 54 of Plaintiffs' Complaint.

29. Documents concerning the clinical management guidelines defined by the American Congress of Obstetricians and Gynecologists Practice Bulletin as those guidelines existed on January 1, 2013, as referenced in Texas Health & Safety Code § 171.063(b).

30. All complication forms submitted to the State of Texas concerning complications that were caused, or suspected to have been caused, in whole or in part by the administration of digoxin.

31. Policies, procedures, guidelines, instructions, affiliation standards, or documents concerning the use of digoxin by you or any other individual identified in the documents responsive to Request No. 1.

32. Policies, procedures, guidelines, instructions, affiliation standards, or documents concerning determination as to the appropriate method for performing an abortion on a particular patient.

33. Documents, articles, treatises, books, papers, publications, peer-reviewed literature, scientific materials, or other documents in your possession, custody, or control concerning the use of digoxin to cause fetal demise.

34. All "intent forms" or other documents describing or concerning the process or specific methods employed in any abortions performed by you or any other individual identified in the documents responsive to Request No. 1.

35. A copy of documents used to obtain informed consent to or waiver of liability for any abortion procedure from your patients, including consents and waivers related to any component of any abortion procedure.

36. Documents that you or any other individual identified in the documents responsive to Request No. 1 have provided to the State pursuant to State law reporting obligations, including any Intentional Termination of Pregnancy ("ITOP") forms and any complications reporting forms.

Dated: August 1, 2017

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief, General Litigation Division

/s/ Darren McCarty
DARREN MCCARTY
Texas Bar No. 24007631
Special Counsel for Civil Litigation
Office of the Attorney General

300 West 15th Street
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2120 (phone)
(512) 320-0667 (fax)

*Attorneys for Defendant Ken Paxton*

## CERTIFICATE OF SERVICE

I certify that on August 1, 2017, this document was served by through the

Court's CM/ECF and e-mail upon the following counsel of record:

Patrick J. O'Connell
Texas Bar No. 15179900
Law Offices of Patrick J. O'Connell PLLC
2525 Wallingwood, Bldg. 14
Austin, Texas 78746
(512) 852-5918
pat@pjofca.com

*Attorney for all Plaintiffs*

Janet Crepps*
Molly Duane*
Center for Reproductive Rights
199 Water St. 22nd Floor
New York, NY 10038
(864) 962-8519 (Janet Crepps)
(917) 637-3631 (Molly Duane)
jcrepps@reprorights.org
mduane@reprorights.org

J. Alexander Lawrence*
Morrison & Foerster LLP
250 W. 55th Street
New York, NY 10019
(212) 336-8638
alawrence@mofo.com

*Attorneys for Plaintiffs Whole Woman's Health,
Alamo City Surgery Center, Southwestern Women's
Surgery Center, Nova Health Systems, Curtis Boyd,
M.D., Jane Doe, M.D., Bhavik Kumar, M.D., and
Alan Braid, M.D.*

Melissa Cohen*
Planned Parenthood Federation of America
123 William Street
New York, NY 10038
(212) 261-4649
melissa.cohen@ppfa.org

*Attorney for Plaintiffs Planned Parenthood Center
For Choice, Planned Parenthood of Greater Texas
Surgical Health Services, and Planned Parenthood
South Texas Surgical Center*

*Admitted pro hac vice*

/s/ Darren McCarty
DARREN MCCARTY
Special Counsel for Civil Litigation