IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
17 AUG 31  PM 4:12
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ AD

| | |
|---|---|
| WHOLE WOMAN'S HEALTH, PLANNED PARENTHOOD CENTER FOR CHOICE, PLANNED PARENTHOOD OF GREATER TEXAS SURGICAL HEALTH SERVICES, PLANNED PARENTHOOD SOUTH TEXAS SURGICAL CENTER, ALAMO CITY SURGERY CENTER PLLC, D/B/A ALAMO WOMEN'S REPRODUCTIVE SERVICES, SOUTHWESTERN WOMEN'S SURGERY CENTER, NOVA HEALTH SYSTEMS, INC. D/B/A REPRODUCTIVE SERVICES, EACH ON BEHALF OF ITSELF, ITS STAFF, PHYSICIANS, AND PATIENTS, CURTIS BOYD, M.D., ROBIN WALLACE, M.D., BHAVIK KUMAR, M.D., M.P.H., ALAN BRAID, M.D., EACH ON THEIR OWN BEHALF AND ON THEIR PATIENTS' BEHALF, <br>                    PLAINTIFFS, <br><br> V. <br><br> KEN PAXTON, ATTORNEY GENERAL OF TEXAS, IN HIS OFFICIAL CAPACITY, AND MARGARET MOORE, DISTRICT ATTORNEY FOR TRAVIS COUNTY, NICHOLAS LAHOOD, CRIMINAL DISTRICT ATTORNEY FOR BEXAR COUNTY, JAIME ESPARZA, DISTRICT ATTORNEY FOR EL PASO COUNTY, FAITH JOHNSON, DISTRICT ATTORNEY FOR DALLAS COUNTY, SHAREN WILSON, CRIMINAL DISTRICT ATTORNEY TARRANT COUNTY, RICARDO RODRIGUEZ, JR., CRIMINAL DISTRICT ATTORNEY FOR HIDALGO COUNTY, ABELINO REYNA, CRIMINAL DISTRICT | §§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§ <br><br> CAUSE NO. A-17-CV-690-LY |

| | |
|---|---|
| ATTORNEY FOR MCLENNAN COUNTY, AND KIM OGG, CRIMINAL DISTRICT ATTORNEY FOR HARRIS COUNTY, EACH IN THEIR OFFICIAL CAPACITY,<br>                DEFENDANTS. | §<br>§<br>§<br>§<br>§<br>§<br>§ |

## TEMPORARY RESTRAINING ORDER

Before the court is the above styled and numbered cause challenging the constitutionality of recently enacted Texas abortion laws. *See* 42 U.S.C. § 1983. The laws at issue are included in Texas Senate Bill 8, Section 6, which, *inter alia*, creates a new Subchapter G in the Texas Health and Safety Code. *See* Act of May 26, 2017, 85th Leg., R.S., ch. 441, § 6, 2017 Tex. Sess. Law Serv. _____ (West) (to be codified at Tex. Health & Safety Code Ch. 171, Subchapter G, §§ 171.151-.154) (the "act"). The act goes into effect September 1, 2017. *Id.* at ch. 441, § 22.

Plaintiffs Whole Woman's Health, Planned Parenthood Center for Choice, Planned Parenthood of Greater Texas Surgical Health Services, Planned Parenthood South Texas Surgical Center, Alamo City Surgery Center PLLC, Southwestern Women's Surgery Center, Nova Health Systems, Inc., Curtis Boyd, M.D., Robin Wallace, M.D., Bhavik Kumar, M.D., M.P.H., and Alan Braid, M.D. (collectively "Plaintiffs"), all providers of abortion services, bring this action on behalf of themselves their staff, physicians, and patients against Defendants Ken Paxton, Attorney General of Texas, in his official capacity, and Travis County District Attorney Margaret Moore, Bexar County Criminal District Attorney Nicholas LaHood, El Paso District Attorney Jaime Esparza, Dallas County District Attorney Faith Johnson, Tarrant County Criminal District Attorney Sharen Wilson, Hidalgo

County Criminal District Attorney Ricardo Rodriguez, Jr., McLennan County Criminal District Attorney Abelino Reyna, and Harris County Criminal District Attorney Kim Ogg.[1]

Plaintiffs seek preliminary and permanent declaratory and injunctive relief holding that the act bans and criminalizes the performance of an abortion procedure commonly known as a dilation and evacuation procedure ("standard D&E") before fetal demise, and is, therefore, unconstitutional because the act has the effect of placing a substantial obstacle in the path of a woman who seeks an abortion before the fetus attains viability.[2] *See Whole Woman's Health v. Hellerstedt*, ___ U.S. ___; 136 S.Ct. 2292, 2300 (2016) (citing *Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833, 878 (1992)).

Pending is Plaintiffs' Motion For a Preliminary Injunction or, In the Alternative, a Temporary Restraining Order, and Memorandum of Law in Support filed July 20, 2017 (Clerk's Document No.

---

[1] Plaintiffs and five of the eight local-prosecutor defendants, including Defendants Travis County District Attorney Margaret Moore, Bexar County Criminal District Attorney Nicholas LaHood, El Paso District Attorney Jaime Esparza, Hidalgo County Criminal District Attorney Ricardo Rodriguez, Jr., and Harris County Criminal District Attorney Kim Ogg ("Nonparticipating Defendants") stipulate to the following: (1) the Nonparticipating Defendants will not (a) enforce the challenged portions of the act until a final non-appealable decision has been rendered in this action; (b) participate in litigating this action unless required to do so thereby conserving prosecutorial resources; and (c) will not file answers, unless ordered by the court; and (2) Plaintiffs (a) shall take no default judgment against the Nonparticipating Defendants; and (b) will not seek attorney's fees, penalties, damages, or any costs or expense of any kind from the Nonparticipating Defendants.

Defendants District Attorney for Dallas County, Faith Johnson; Criminal District Attorney for Tarrant County, Sharen Wilson; and Criminal District Attorney for McLennan County, Abelino Reyna are actively participating in this action. As the interests of these three local-prosecutor defendants are aligned with Paxton, the court refers to them collectively as "the State."

[2] The court refers to the abortion procedure at issue as a "standard D&E" procedure so as to distinguish it from an "intact D&E," also known as a "D&X" procedure, which involves dilating the cervix enough to remove the fetus intact. The intact D&E or D&X procedure is banned under the Federal Partial-Birth Abortion Ban Act of 2003, unless fetal demise is induced before the procedure. *See* 18 U.S.C. § 1531; *Gonzales v. Carhart*, 550 U.S. 124, 127 (2007) (upholding federal partial-birth abortion ban).

6), the State's Response to Plaintiffs' Motion for a Temporary Restraining Order filed August 11, 2017 (Clerk's Document No. 41), and Plaintiffs' Reply in Support of a Temporary Restraining Order filed August 18, 2017 (Clerk's Document No. 49). Although the State's response to Plaintiffs' motion acknowledges that "[t]his is a significant case that deserves a full and fair adjudication with all relevant facts in the record, not rushed consideration," the State does not agree to maintain the *status quo* pending resolution of the issues in this case.

On August 29, 2017, the court held a hearing on Plaintiffs' request for a temporary restraining order at which all parties were represented by counsel. Having considered the Plaintiffs' motion, the State's response, the Plaintiffs' reply, the arguments of counsel, and the applicable law, the court finds and concludes that Plaintiffs satisfy the requirements for a temporary restraining order to maintain the *status quo* pending a hearing on Plaintiffs' request for a preliminary injunction. *See* Fed. R. Civ. P. 65.

**Legal standard for temporary restraining order**

The party moving for a temporary restraining order, like an applicant for a preliminary injunction, must establish four elements:

> (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the temporary restraining order is denied; (3) that the threatened injury outweighs any damage that the temporary restraining order might cause the defendant; and (4) that the temporary restraining order will not disserve the public interest.

*Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014) (quoting *Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir. 1998)); *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). A temporary restraining order is an extraordinary remedy which

should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements. *See PCI Transp., Inc*, 418 F.3d at 545.

**The act**

The act imposes civil liability and a criminal penalty on physicians who perform "dismemberment abortions," defined as,

> dismember[ing] the living unborn child and extract[ing] the unborn child one piece at a time from the uterus through the use of clamps, grasping forceps, tongs, scissors, or a similar instrument that, through the convergence of two rigid levers, slices, crushes, or grasps, or performs any combination of those actions on, a piece of the unborn child's body to cut or rip the piece from the body. The term does not include an abortion that uses suction to dismember the body of an unborn child by sucking pieces of the unborn child into a collection container. The term includes a dismemberment abortion that is used to cause the death of an unborn child and in which suction is subsequently used to extract pieces of the unborn child after the unborn child's death.

Ch. 441, § 6.

> (a) A person may not intentionally perform a dismemberment abortion unless the dismemberment abortion is necessary in a medical emergency.
>
> (b) A woman on whom a dismemberment abortion is performed, an employee or agent acting under the direction of a physician who performs a dismemberment abortion, or a person who fills a prescription or provides equipment used in a dismemberment abortion does not violate Subsection (a).

*Id.*

An exception applies in "a medical emergency," which is defined as

> a life-threatening physical condition aggravated by, caused by, or arising from a pregnancy that, as certified by a physician, places the woman in danger of death or a serious risk of substantial impairment of a major bodily function unless an abortion is performed.

5

Texas Health & Safety Code Ann. § 171.002(3) (West 2017). A physician found to be in violation of the law commits a state jail felony criminal offense punishable by a minimum of 180 days to a maximum of two years in jail and a fine of up to $10,000. Ch. 441, § 6; Tex. Penal Code Ann. § 12.35(a), (b) (West Supp. 2016).

**Laches**

As an initial matter, the State contends that Plaintiffs unreasonably delayed filing this action and therefore, based on the equitable doctrine of laches, should be denied immediate temporary relief. Laches has three interrelated elements: "(1) delay in asserting a right or claim; (2) that the delay was inexcusable; and (3) that undue prejudice resulted from the delay." *Blanco River, L.L.C. v. Green*, 457 Fed. Appx. 431, 441 (5th Cir. 2012) (quotiong *Aramco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1161 (5th Cir. 1982)).

The State contends that it is Plaintiffs' delay in filing this action that forced Plaintiffs to request immediate relief. Additionally, the State asserts that it is prejudiced by the fact that it has "mere weeks to prepare to defend the constitutionality of a duly enacted law, and . . . there are factual issues in this case that require discovery."

Plaintiffs respond that filing this action six weeks after Senate Bill 8 was enacted, is not unreasonable given that such time was necessary for Plaintiffs' to exercise good-faith efforts to investigate the facts and the law regarding the issues raised. Further Plaintiffs argue that timing aside, "the concept of undue prejudice, an essential element of laches, is normally inapplicable when the relief [sought] is prospective." *See Environmental Def. Fund v. Marsh*, 651 F.2d 983, 1005, n. 32 (5th Cir. Unit A July 1981); *see also Teladoc, Inc. v. Texas Med. Bd.*, No. 15-CV0343-RP, 2015 WL 8773509, at *5 (W.D. Tex. Dec. 14, 2015).

The substance of the act first appeared as Senate Bill 415, filed January 5, 2017, and read first to the Texas Senate on January 30, 2017. *See* S.J. 85th R. S. 135 (2017); (SB 415 History, Tex. Legislature Online, available at http://www.capitol.state.tx.us/billlookup/text.aspx?LegSess=85R&Bill=SB415). After passing the Senate, Senate Bill 415 failed to proceed any farther than the State Affairs Committee of the Texas House of Representatives. *See* H.J. 85th Leg., R.S. 2454 (2017). On May 19, 2017, the act, no longer a stand-alone bill but an amendment to Senate Bill 8, Section 6, was laid before the Texas House of Representatives. *See* H.J. 85th Leg., R.S. 3814 (2017); (SB 8 History, Tex. Legislature Online, available at http://www.capitol.state.tx.us/billlookup/text.aspx?LegSess=85R&Bill=SB8). On May 20, 2017, the House of Representatives passed the act. H.J. 85th Leg., R.S. 3895-96 (2017). On May 26, 2017, the Texas Senate considered the substance of the act as a floor amendment and, with some modifications, passed the act as part of Senate Bill 8 the same day. S.J. 85th Leg., R.S. 5564 (2017). On June 6, 2017 the act was signed into law by the Governor of Texas. On July 20, 2017, Plaintiffs filed this action and requested temporary injunctive relief. On September 1, 2017, the act becomes effective.

Having considered all of the circumstances related to the act and the parties' actions, the court concludes that Plaintiffs have not so unreasonably delayed asserting their claims that they should be denied the opportunity to show they may be entitled to immediate injunctive relief. The court further concludes that the State has not been unduly prejudiced by any such delay. The State made its position clear on the record in open court during an August 4, 2017 status conference, that the State needed limited discovery before a preliminary-injunction hearing, but none before any hearing on the Plaintiffs' request for a temporary restraining order. As the Plaintiffs contend, the State acknowledges, and the court agrees, this is a significant case that deserves a full and fair adjudication

7

with all relevant facts in the record. Although the court is of the opinion that Plaintiffs could have filed this action before July 20 had they been more diligent and that delay until July 20 has unnecessarily compressed the time between the filing of the action and the date the act takes effect, the delay falls in the category of an excusable annoyance. The court concludes that Plaintiffs' request for immediate temporary relief is not barred by the equitable defense of laches.

**Substantial likelihood of success on the merits**

*Legal standard*

Although the Fourteenth Amendment protects a woman's right to choose to terminate her pregnancy prior to viability, government regulation of abortions is allowed so long as it does not impose an undue burden on a woman's ability to choose. *Casey*, 505 U.S. at 878. An undue burden exists if a regulation's "purpose or effect" is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability. *Id.*

Plaintiffs argue "a statute which, while furthering [a] valid state interest, has the effect of placing a substantial obstacle in the path of a woman's choice cannot be considered a permissible means of serving its legitimate ends." *Whole Woman's Health,* 136 S.Ct. at 2309 (quoting *Casey*, 505 U.S. at 877). Consequently, a law is constitutionally invalid, if the "purpose or effect" of the law "is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability." *Id.* at 2300 (quoting *Casey*, 505 U.S. at 878).

The State responds arguing that *Whole Woman's Health* addressed abortion regulations when the State's only asserted valid interest was protecting women's health–not as is here where the State's asserted valid interest is respecting the life of the unborn. The State argues that *Whole Woman's Health's* women's-health-based analysis does not apply when challenged abortion laws are based on

8

the State's interest in protecting the life of the unborn. The State contends that as it only "relies on its interest respecting unborn life and the [act] furthers that interest, courts [are to] consider only whether the [act] imposes a substantial obstacle on abortion access."

Unless *Roe v. Wade*, 410 U.S. 113, 116 (1973), is overruled by the United States Supreme Court, this court, in determining whether a state statute is unconstitutional and violates substantive-due-process rights in the abortion context, will apply the "undue burden" standard developed in *Casey*. *Id*. *Casey* describes a unitary standard that applies regardless of a state's asserted interests. 505 U.S. at 877 ("[A] statute which, while furthering the interest in potential life or some other valid state interest, has the effect of placing a substantial obstacle in the path of a woman's choice cannot be a permissible means of serving its legitimate ends.") "The rule announced in *Casey*, [] requires that courts consider the burdens a law imposes on abortion access together with the benefits those laws confer." *Whole Woman's Health*, 136 S.Ct. at 2309. "A finding of an undue burden is a shorthand for the conclusion that a state regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." *Casey*, 505 U.S. at 877. Whether an obstacle is substantial–and a burden is therefore undue–must be judged in relation to the benefits that the law provides. *Whole Woman's Health*, 136 S.Ct. at 2309. Where a law's burdens exceed its benefits, those burdens are, by definition, undue, and the obstacles they embody are, by definition, substantial. *Id*. at 2300, 2309-10, 2312, 2318.

"[T]he [Supreme] Court when determining the constitutionality of laws regulating abortion procedures, has placed considerable weight upon evidence and argument presented in judicial proceedings." *Id*. at 2310. As *Whole Woman's Health* instructs, a district court in conducting this weighing of the benefits of a law regulating abortion procedures against the burdens of the law, is to

consider the evidence in the record, which may include among other things expert evidence, presented in stipulations, depositions, and testimony. *Id.*

### *Plaintiffs' declarations in support of their request for temporary restraining order*

In summary, declarations from physicians included with Plaintiffs' motion provide that starting at 15 weeks and sometimes sooner, physicians perform surgical abortions and most often perform a standard D&E procedure before fetal demise. In performing the procedure, the physician dilates the woman's cervix and may use a combination of suction and forceps or other instruments to remove the fetus and other *in utero* materials through the dilated cervical opening.[3] At 15 weeks, because the fetus is larger than the dilated cervical opening, during a standard D&E procedure, separation or disarticulation of fetal tissue usually occurs, as the physician will use instruments in addition to suction to move fetal tissue through the cervix.[4] The evacuation phase takes approximately 10 minutes. The standard D&E procedure is safely performed as an outpatient procedure and is the most common abortion procedure available after 15 weeks of pregnancy.[5]

Other than the standard D&E, the only other abortion procedure available to physicians during the second trimester is induction abortion, in which the physician uses medication to induce labor and delivery of a nonviable fetus. Induction of labor is uncommon both in Texas and nationally.

---

[3] Plaintiffs represent that as is common in the medical literature, gestational age is written as the number of weeks, followed, after a decimal point, by the number of days of the subsequent week. For example, "16.0" represents a gestational age of 16 weeks, 0 days, while "17.6 weeks" represents a gestational age of 17 weeks, 6 days. The court will refer to only complete weeks.

[4] Generally, before 15 weeks physicians do not use the standard D&E procedure because the fetus and all other *in utero* materials will pass through a dilated cervix using only suction.

[5] In Texas, it is only in rare circumstances that an abortion may be performed after 20 weeks. *See* Tex. Health & Safety Code Ann. §§ 171.044, .046 (West 2017).

Induction abortions must be performed in a hospital or similar facility that has the capacity to monitor a patient overnight. Induction abortions can last from five hours to three days; are extremely expensive; entail more pain, discomfort, and recovery time for the patient than a standard D&E procedure; and are medically contraindicated for some patients.

Although the standard D&E procedure is not referred to explicitly in the act, Plaintiffs claim the act bans the commonly performed procedure without first causing fetal demise. The act does not use or define the term fetal demise or explain how fetal demise should be determined. Plaintiffs suggest that the fetus would no longer be considered living under the act when asystole–the termination of a heartbeat–occurs.

There is no dispute that the act does not apply to a standard D&E procedure during which the physician–through a separate procedure–causes fetal demise before beginning the evacuation phase of the standard D&E procedure. Although other procedures that cause fetal demise before the evacuation phase of the D&E procedure exist–(1) use of a hypodermic needle to inject a drug called digoxin transabdominally; (2) an injection of potassium chloride directly into the fetal heart; and (3) an umbilical cord transection–Plaintiffs contend none is safe, studied, or medically appropriate. Plaintiffs contend that physicians attempting any of these other procedures before evacuation, would impose risks with no medical benefit to the patient, each of these procedures is untested, has unknown risks, and is of uncertain efficacy. Requiring fetal demise in every instance before starting the evacuation phase of the standard D&E procedure would mandate that physicians experiment on their patients, and many or even most physicians would decline to do so.

Plaintiffs also argue that *Stenberg v. Carhart* is controlling precedent holding that a ban on the standard D&E procedure is an undue burden. 530 U.S. 914, 945-46 (2000). *Stenberg* addressed

a Nebraska law which the Court held banned standard D&E procedures and thereby imposed an undue burden upon a woman's right to a previability abortion. *Id.*

> In sum, using this law some present prosecutors and future Attorneys General may choose to pursue physicians who use D&E procedures, the most commonly used method for performing previability second trimester abortions. All those who perform abortion procedures using that method must fear prosecution, conviction, and imprisonment. The result is an undue burden upon a woman's right to make an abortion decision. We must consequently find the statute unconstitutional.

*Id.*

### State's response

The State responds that requiring physicians performing a standard D&E abortion to cause fetal demise before starting the evacuating phase of a standard D&E does not impose any significant health risks or burdens on women. The State suggests there are at least three safe and effective methods of inducing fetal demise–the same three methods Plaintiffs contend would impose risks with no medical benefit to the patient, are untested, have unknown risks, and are of uncertain efficacy. The State contends that each of these possible alternatives, especially the use of digoxin, allow physicians to cause fetal demise before conducting the standard D&E abortion without any significant additional risk to women. The State's response includes several citations to various articles.

### Plaintiffs' reply

By their reply, Plaintiffs maintain their position that each of the three alternatives impose risks with no medical benefit to the patient, each of the procedures is untested, has unknown risks, and is of uncertain efficacy. Plaintiffs raise several issues with the articles the State relies upon. Additionally, Plaintiffs note that causing fetal demise by the State's suggestion of injections of either

digoxin or potassium chloride, neither of which is labeled for that purpose, would violate Texas law prohibiting off-label prescription of an abortion-inducing drug. *See* Tex. Health & Safety Code Ann. §§ 171.061(2), .063 (West 2017).

*Analysis*

To satisfy the success-on-the-merits prong for a temporary restraining order, Plaintiffs must show a substantial likelihood of success, not certainty. The undue-burden test courts are required to conduct to evaluate challenged government-imposed abortion restrictions "requires that courts consider the burdens a law imposes on abortion access together with the benefits those laws confer." *Whole Woman's Health*, 136 S.Ct. at 2309. The court assumes the State's interests are legitimate, however, the State cannot pursue its interests in a way that denies a woman her constitutionally protected right to terminate a pregnancy before the fetus is viable.

The act bans the most common and accepted medical procedure for second-trimester abortions–performance of the standard D&E before fetal demise. The parties disagree about whether the medical options available to a physician to cause fetal demise before performing the evacuation phase of the standard D&E abortion would, as a practical matter, force a woman and her physician to terminate her pregnancy by methods more risky and dangerous to the woman's health than the outlawed procedure.

The State's interest notwithstanding, this court finds no authority for holding that government-mandated medically unnecessary, untested, or a more invasive procedure, or a more complicated and risky procedure with no proven medical benefits over the safe and commonly used banned procedure, is a permissible means of regulating previability abortions. *See e.g., Gonzales v. Carhart*, 550 U.S. 127, 161-65 (2007) (intact D&E or D&X procedure banned under Federal Partial-

Birth Abortion Ban Act of 2003 is no undue burden implicitly holding because alternative standard D&E procedure available); *Stenberg*, 530 U.S. at 930 (invalidating Nebraska law because no distinction between standard D&E procedure, which would impose undue burden and D&X procedure which does not impose undue burden). The court finds and concludes that at this juncture and based on the currently thin record in this action, Plaintiffs have shown a substantial likelihood of success on the merits.[6]

**Substantial threat Plaintiffs will suffer irreparable harm**

The second requirement for a temporary restraining order–whether there is a substantial threat that Plaintiffs will suffer irreparable injury if the request for a temporary restraining order is denied–is also satisfied by Plaintiffs. In the absence of a temporary restraining order, as of September 1, 2017, any woman in Texas who is between 15 and 20 weeks pregnant and seeks a previability abortion will no longer have available from a physician in Texas the standard D&E procedure, which as described is a safe one-day abortion procedure that is commonly performed throughout the United States. The act leaves that woman and her physician with abortion procedures that are more complex, risky, expensive, difficult for many women to arrange, and often involve multi-day visits to physicians, and overnight hospital stays.

The court concludes that Plaintiffs have established that absent a temporary restraining order they will suffer irreparable harm by being unable to access the most commonly used and safest

---

[6] The court recognizes that upon Plaintiffs establishing a substantial likelihood that they will succeed on the merits of their claimed constitutional violation, the court need not proceed to review whether Plaintiffs have shown irreparable injury. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ('the loss of [constitutional] freedoms . . . unquestionably constitutes irreparable injury."). The court however, reviews the record for each requirement for a temporary restraining order.

previability-second-trimester-abortion procedure ahead of any substantial constitutional review of the act.

**Threatened injury outweighs any damage the order might cause the State**

Plaintiffs have also satisfied the third requirement for a temporary restraining order–the threatened injury to the Plaintiffs outweighs any damage that the temporary restraining order might cause the State. In conducting the required undue-burden balancing analysis, the court must weigh the burden the act imposes on abortion access with the benefits the act confers. *Whole Woman's Health,* 136 S.Ct. at 2309. As previously mentioned, the State acknowledges that "[t]his is a significant case that deserves a full and fair adjudication with all relevant facts in the record." Here, the threatened injury–taking away from women in Texas who seek a constitutionally lawful previability second-trimester abortion, the commonly performed and safe standard D&E procedure before fetal demise–outweighs any damage that a *status quo* temporary restraining order might cause the State.

**The order will not disserve the public interest**

The court also finds that Plaintiffs have satisfied the fourth requirement for a temporary restraining order–that a temporary restraining order will not disserve the public interest. Before the court are weighty constitutional issues.[7] The Texas Legislature passed the act, which creates new

---

[7] Arkansas, Louisiana, Kansas, Oklahoma, Alabama, Indiana, Mississippi, and West Virginia have enacted state laws similar to the act. In some of those states courts have granted injunctions enjoining enforcement of the statutes. *See Hopkins v. Jegley*, No. 4:17-CV-00404-KGB \_\_\_\_\_ F.Supp. 3d \_\_\_\_\_, 2017 WL 3220445 (E.D. Ark. July 28, 2017) (preliminary injunction granted); *Planned Parenthood of Ind. & Ky., Inc. v. Commissioner*, No. 1:16-CV-01807-TWP-DML, \_\_\_\_ F.Supp. 3d _____, 2017 WL 1197308 (S.D. Ind. Mar. 31, 2017), *appeal docketed*, No 17-1883 (7th Cir. Apr. 27, 2017) (preliminary injunction granted); *West Ala. Women's Ctr. v. Miller*, 217 F.Supp. 3d 1313 (M.D. Ala. 2016), *appeal docketed*, No. 16-17296 (11th Cir. Nov. 29, 2016) (preliminary injunction granted); *Hodes & Nauser v. Schmidt MDs, P.A.*, 368 P.3d 667 (Kan. Ct.

abortion restrictions, without designating the act an emergency. *See* Tex. Const. art. 3, § 39 (legislation designated as emergency and received record vote of two-thirds of each house becomes effective upon the Governor of Texas signing the act; otherwise legislation takes effect at least 90 days after adjournment of session in which enacted). The court concludes that it is in the public interest to preserve the *status quo* and give the parties ample opportunity to develop the record regarding the constitutional questions raised without subjecting Plaintiffs or the public to any of the act's potential harms. The court finds lacking any compelling reason not to maintain the *status quo*. A temporary restraining order, therefore, will not disserve the public interest.

**Conclusion**

Concluding that Plaintiffs prevail in carrying the burden of persuasion on each of the four requirements for a temporary restraining order, the court renders the following:

**IT IS ORDERED** that Plaintiffs' Motion For a Preliminary Injunction or, In the Alternative, a Temporary Restraining Order filed July 20, 2017 (Clerk's Document No. 6) is **GRANTED IN PART** and to the extent that Plaintiffs' request for a temporary restraining order is **GRANTED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 65 of the Federal Rules of Civil Procedure, Defendants Ken Paxton, Attorney General of Texas as well as his employees, agents, and successors in office, Defendants Travis County District Attorney Margaret Moore, Bexar County Criminal District Attorney Nicholas LaHood, El Paso District Attorney Jaime Esparza, Dallas County District Attorney Faith Johnson, Tarrant County Criminal District Attorney Sharen Wilson, Hidalgo

---

App. 2016), *pet. rev. granted*, April 11, 2016) (temporary injunction granted); *Nova Health Sys. v. Pruitt*, No. CV-2015-1838, slip op. (Okla. Cty. Dist. Ct. (Oct. 28, 2015) (temporary injunction granted). *See also June Med. Servs. LLC v. Gee*, No. 3:16-CV-0444-BAJ (filed July 1, 2016) (ongoing litigation challenging Louisiana ban on standard D&E procedure).

County Criminal District Attorney Ricardo Rodriguez, Jr., McLennan County Criminal District Attorney Abelino Reyna, and Harris County Criminal District Attorney Kim Ogg as well as their employees, agents, and successors in office are **HEREBY ENJOINED** from enforcing those provisions of Senate Bill 8, Section 6, Ch. 441, § 6, 2017 Tex. Sess. Law. Serv. _____ creating Texas Health and Safety Code sections 171.151 through 171.154.

**IT IS FURTHER ORDERED** that Plaintiffs' request for a preliminary injunction is set for hearing at 9:00 a.m. September 14, 2017, in Courtroom 7 Seventh Floor of the United States Courthouse, 501 West 5th Street, Austin, Texas, 78701.

**IT IS FURTHER ORDERED** that no bond is required. The clerk of court shall issue a temporary restraining order in conformity with the law and the terms of this order.

**IT IS FURTHER ORDERED** that unless extended, this temporary restraining order will expire on September 14, 2017, at 4:05 p.m.

**IT IS FINALLY ORDERED** that this case is set for a status conference at 9:30 a.m. September 11, 2017, in Courtroom 7 Seventh Floor of the United States Courthouse, 501 West 5th Street, Austin, Texas, 78701.

SIGNED this 31st day of August, 2017, at 4:05 p.m.

```
_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE
```