**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| WHOLE WOMAN'S HEALTH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | CASE NO. 1:17-CV-0690-LY |
| | ) | |
| KEN PAXTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFFS' OPPOSITION TO DEFENDANT PAXTON'S MOTION TO COMPEL

Notwithstanding the Court's admonition at the July 26, 2017 conference that Defendant Paxton should only pursue "limited discovery" and should not "overreach," Defendant Paxton only days later served irrelevant and wide-ranging discovery requests and has been to date unwilling to agree to reasonable limits on discovery. Plaintiffs are providing broad discovery, but Plaintiffs should not be required to produce all of the information and documents that Defendant Paxton demands.

In deciding this motion, it is important to keep in mind what this case is about. First, this case only concerns D&E procedures, which are only performed in the second trimester, beginning at approximately 15 weeks LMP. Second, this case does not involve a law that requires that physicians **attempt to cause fetal demise** before performing a D&E procedure; rather this case involves a law that requires that a physician **succeed in causing fetal demise** before performing a D&E procedure. The distinction is critical. Plaintiffs will stipulate that some physicians attempt to cause fetal demise before performing a D&E procedure. As Defendants, however, should be willing to stipulate—in that their own study submitted in this case states that digoxin fails to cause demise in more than one in every ten cases and the only

credible evidence is that umbilical cord transection cannot be done in every case—no method of causing fetal demise works every time.  Thus, if the Act goes into effect, physicians in Texas will be faced with the near certainty that they will commence a D&E procedure and not be able to cause fetal demise.  At that point, the physician will be at a cross-roads:  either (1) complete the procedure then and there without causing fetal demise and face criminal prosecution; or (2) make further attempts to cause demise, including potentially a second dose of digoxin, and send the patient home while she is fully dilated and at serious risk of infection and other complications, and hope that when the patient returns the next day, the digoxin has taken effect.  Thus, the Act places all physicians—those who currently attempt fetal demise and those who do not—in an untenable positon.

Defendant Paxton claims that many physicians in Texas currently comply with the law and that he needs much of this discovery to prove that fact.  He does not.  Plaintiffs will stipulate that there are physicians in Texas who are currently attempting to cause fetal demise after 18 weeks LMP, but Defendants must stipulate that there are no physicians in Texas who currently attempt to cause fetal demise while facing criminal prosecution if they fail in that effort.

## I.   DEFENDANT PAXTON'S DISCOVERY REQUESTS

At the July 26, 2017 conference before the Court, counsel for Defendant Paxton stated "the State of Texas needs certain discovery—**limited** discovery before the preliminary injunction hearing, not before the TRO hearing." (Tr. at 13 (emphasis added).)  At the conference, the Court repeatedly noted that while discovery should be permitted, it should be limited and tailored.  *See, e.g.*, Tr. at 33-34 ("Presume I'm going to grant some limited discovery that is tailored to specific issues that are important to the outcome of this case); *see also* Tr. at 17 and 33.  The message from the Court was clear.  Defendants should seek limited tailored discovery and not overreach, and Plaintiffs should give them that discovery.

### A. Defendant Paxton's Document Demands and Interrogatories.

On August 1, 2017, despite the Court's admonition only days earlier, Defendant Paxton served thirty-six (36) document requests and twenty-three (23) interrogatories, which were entirely overbroad, seeking documents and information that in many instances would require a review of each of the patient files for hundreds of thousands of procedures going back over six years, including information about both medical and surgical first trimester procedures. (*See* Exhibits A-B to Defendant Paxton's Motion to Compel (Dkt. Nos. 57-1–57-2).)[1]

On August 18, 2017, well in advance of the time required under the Federal Rules, Plaintiffs served responses and objections to the requests and interrogatories. (*See* Exhibits D-E to Defendant Paxton's Motion to Compel (Dkt Nos. 57-4–57-5).) Plaintiffs responded (or agreed to respond after entry of a protective order) to many of the requests and interrogatories and sought to meet and confer about the remainder.

On August 22, 2017, the parties met and conferred for several hours regarding Defendant Paxton's discovery requests. By email dated August 23, 2017, Plaintiffs noted that they would move expeditiously to provide the following documents and information:

- The names of all physicians currently providing D&E procedures at Plaintiff facilities, and for each physician an indication of whether they have been providing D&E's since January 1, 2016, and if they have been providing D&E's for a shorter period, when they began doing so. For each of the physicians, the following: (1) whether they have used digoxin to attempt to cause fetal demise since January 1, 2016 through the present; (2) whether they have attempted umbilical cord transection in order to cause fetal demise since January 1, 2016 through the present; (3) for those physicians who have used digoxin to attempt to cause fetal demise, whether they believe that doing so makes the procedure easier; and (4) which of the named physicians do not use digoxin because they believe that doing so might violate Tex. Health & Safety Code § 171.063.

---

[1] Defendant Paxton's overly broad discovery requests do not stop here. On September 4, 2017, Defendant Paxton served a Notice of Subpoena to Non-Party Abortion Providers, including 12 separate subpoenas to out-of-state providers. Each request seeks 10 separate categories of documents going back over 10 years and demands a production in seven days, which is not a "reasonable time to comply" under Rule 45.

- From the physician Plaintiffs who have used digoxin to attempt to cause fetal demise since January 1, 2016 through the present, information that they can recall as to:  the failure of digoxin to cause fetal demise; complications from digoxin; and any patients for whom digoxin was contraindicated.

- Without performing a chart-by-chart review to compile the data, the aggregate data that is readily available regarding D&E procedures performed at Plaintiff facilities, including, to the extent it is available, any aggregate data regarding procedures performed at various gestational ages by physicians and/or the facility, the use of digoxin, and one versus two-day procedures at gestational ages prior to the routine use of overnight dilation.  (Depending on the Plaintiff facility, some but not all of the data may include the number of procedures performed by individual doctors).)

- The protocols for D&E procedures, including dilation, and digoxin (if applicable).

- The informed consent forms for D&E procedures generally, dilation, and digoxin (if applicable).

- The amount that Plaintiff clinics that have purchased digoxin have spent from January 1, 2016 through the present (if the information is readily available and would not require unduly burdensome record review).

Heeding the Court's admonition not to dig in their heels, Plaintiffs have essentially agreed to produce almost all of the requested information as long as doing so would not require Plaintiffs to go back through thousands of patient files to create reports on statistical information.

By way of example, Plaintiff Southwestern Women's Surgery Center ("Southwestern") maintains its patients' medical records in physical, paper files, stored in boxes. The paper files are organized by month and then alphabetically by patient's last name.  Southwestern stores the paper files for the previous year on site, and stores the remainder of its files in an offsite facility. Each page of a patient's file bears a sticker with the patient's name, date of birth, chart number, and shorthand for the physician's name.  Beginning in March of 2016, Southwestern began scanning patient files and storing them electronically as .pdf files. Each .pdf file can be pulled up and examined, but Southwestern cannot run searches across all patient records simultaneously. Therefore, Defendant Paxton's discovery requests from Southwestern alone seek information

4

contained in approximately 60,000 individual patient medical records, most of which are stored in hundreds of boxes in multiple locations.

Most of the Plaintiff clinics have similarly lowtech file storage systems.  Nonetheless, to the extent that there is electronic data from which reports could be generated from the Plaintiff facilities that would include the information Defendant Paxton has requested, Plaintiffs have agreed to produce reports containing that information from January 2016 forward.

On September 1, 2017, all Plaintiff facilities—other than the Houston facility in light of the impact of Hurricane Harvey—served Supplemental Response to Interrogatories Nos. 1, 2, 4-6, 9-13, 15-19, and 22, and Requests For Production Nos. 1, 2, 4-6, 9-19, 26, 28, 31-34, and 35 ("Plaintiffs' Supplemental Responses").  Redacted copies of the Plaintiffs' Supplemental Responses are attached hereto as Exhibits E- J.  Plaintiff facilities are also producing documents responsive to these same Interrogatories and Requests for Production on a rolling basis, beginning this week.

**B. Defendant Paxton's 30(b)(6) Notices**

Defendant Paxton's overly broad discovery requests were not limited to interrogatories and document demands.  On the night of Wednesday, August 16, 2017, without first consulting Plaintiffs about scheduling as is the typical practice, Defendant Paxton served seven 30(b)(6) notices for each of the seven Plaintiff facilities.  (*See* Exhibit C to Defendant Paxton's Motion to Compel (Dkt. No. 57-3).)  The first of those depositions was set to commence the following Tuesday, August 22, 2017 at 10:00 a.m., with a deposition a day for seven days straight, and with one of the depositions taking place on the same date the Court previously scheduled a hearing on Plaintiffs' motion for a temporary restraining order:  (1) Whole Woman's Health (Tuesday, August 22, 2017); (2) Alamo City Surgery Center PLLC (Wednesday, August 23, 2017); (3) Nova Health Systems (Thursday, August 24, 2017); (4) Planned Parenthood South

Texas Surgical Center (Friday, August 25, 2017); (5) Planned Parenthood of Greater Texas Surgical Health Services (Monday, August 28, 2017); (6) Planned Parenthood Center for Choice (Tuesday, August 29, 2017); and (7) Southwestern Women's Surgery Center (Wednesday, August 30, 2017).

On three business days' notice, Defendant Paxton demanded Plaintiffs to produce witnesses prepared to testify on over 30 discrete issues, many of which would require knowledge about each of the tens of thousands of procedures performed at each facility over more than six years. The notices also sought testimony regarding topics that are clearly irrelevant, such as first trimester surgical abortions, medication abortions that are performed entirely within the first trimester, procedures performed at Plaintiff facilities unrelated to abortion and not even related to pregnancy, and abortion pricing information. The notices further demanded that the deponent produce a wide range of documents "relied upon or referred to" in preparation for the deposition, which would necessarily include many documents that Plaintiffs had previously objected to producing.

On the morning of Monday, August 21, 2017, Plaintiffs served objections to the deposition notices and sought to meet and confer with Defendant Paxton.[2] Defendant Paxton insisted that his counsel would appear the next day at the first of the depositions with a court reporter notwithstanding Plaintiffs' objections and the failure to provide reasonable notice under the Federal Rules. (*See* Exhibit F to Defendant Paxton's Motion to Compel (Dkt. No. 57-3).)

## II.   ARGUMENT

Pursuant to the Court's instructions at the August 29, 2017 hearing that the requests should be treated on a request-by-request, interrogatory-by-interrogatory, and deposition topic-

---

[2] Defendant Paxton did not attach Plaintiffs' 30(b)(6) objections to his motion to compel. A copy is attached hereto as Exhibit D.

by-deposition topic basis (Tr. at 63), Plaintiffs have broken the discovery requests into the following categories below.  Plaintiffs have not repeated all of their objections to these discovery requests, which are set forth in the responses and objections attached to the motion to compel and/or hereto.  Rather, Plaintiffs have set forth the information and documents that they have either provided or will be providing on a rolling basis and that should fulfill their discovery obligations and explained why what Defendant Paxton is seeking is unreasonable.

### A. Discovery Requests for the Identity of Abortion Providers Who Do Not Perform D&E Procedures.

While this action only involves second trimester D&E Procedures, which many abortion providers in Texas do not provide, Defendant Paxton seeks the identity of every abortion provider at the Plaintiff facilities—past or present.  Plaintiffs either have provided or will provide the names of all physicians currently providing second trimester D&E procedures at each of the Plaintiff facilities.  *See* Plaintiffs' Supplemental Responses.  In doing so, Plaintiffs either have indicated or will indicate if the physicians have been providing D&E's since January 1, 2016, and if they have been providing D&E's for a shorter period, when they began doing so.

| Request, Interrogatory, or 30(b)(6) Topic |
|---|
| Interrogatory No. 1 - Identify each individual who performs or has performed one or more abortions at one of your facilities, clinics, offices, or ambulatory surgical centers in Texas during each year since 2011. <br><br> Document Request No. 1- Documents sufficient to identify all of the individuals you list in your answer to Interrogatory No. 1. <br><br> 30(b)(6) Topic 1(a) - Individuals who perform or have performed one or more abortions at one of your facilities, clinics, offices, or ambulatory surgical centers in Texas during each year since 2011. |

### B. Overly Broad "Each Procedure Since 2011" Discovery Requests.

Notwithstanding the Court's instructions that Defendant Paxton not overreach, he served a series of requests that seek information about hundreds of thousands of procedures that have been performed at each of the Plaintiff facilities—including, for each procedure, the patient's

initials, the date of the procedure, the treating physician, and the gestational age—for more than

six years.

Beyond the sheer number of procedures Plaintiff facilities have performed since 2011,

compiling data back to 2011 is unreasonable and unduly burdensome for many operational

reasons.  First, many Plaintiff facilities keep patient files older than a year or two in offsite

facilities that may involve storage fees to access, so patient files dating back to 2011 are often

inaccessible and/or costly to obtain.  Second, much procedure data dating back to 2011 is

irrelevant, as it would include information about facilities that have closed (e.g., Whole

Woman's Health in Beaumont closed in 2014) and about physicians who are no longer employed

by the Plaintiff clinics and thus outside their control.  Further, several Plaintiff facilities, Nova

Health Systems and Alamo City Surgery Center ("Alamo"), did not exist in their current form in

2011.  Alamo opened an ambulatory surgical center in June of 2015, but before that time, Alamo

operated a separate licensed abortion facility.  Similarly, Nova Health Systems was closed from

April 2014 to October 2015 while provisions of H.B. 2 were in effect, and re-opened in a

different facility with a new abortion facility license.

To respond as Defendant Paxton continues to insist would require a laborious chart-by-

chart review and tabulation process that would likely take months and in many cases would

result in gathering information that has no relevance to this dispute.

| Request, Interrogatory, or 30(b)(6) Topic | Plaintiffs' Production |
|---|---|
| Interrogatory No. 2 - For each individual identified in response to Interrogatory No. 1, state the total number of abortions that individual performed at each week of Post-fertilization Age during each year since 2011.<br><br>Document Request No. 2 - Documents sufficient to identify the number of abortion procedures performed by each individual listed in Interrogatory No. 1 at each week of Post- | While the number of first trimester surgical and medication abortions performed by these individuals has no relevance to this case, Defendants already have access to such information for each facility from the Texas Department of State Health Services ("DSHS"). *See* DSHS - Induced Abortion Report Form (Exhibit A); *see also* Order Granting Unopposed Motion for an Order Authorizing the Disclosure and Use of Abortion-Related Documents, |

| Request, Interrogatory, or 30(b)(6) Topic | Plaintiffs' Production |
|---|---|
| fertilization Age during each year since 2011.<br><br>30(b)(6) Topic 1(b) - The total number of abortions performed at each week of LMP Age during each year since 2011, including D&Cs, D&Es, and/or all other methods. | Information, and Data (Dkt. No. 56); Defendants' Initial Disclosures (identifying DSHS as having "information concerning the number of abortions performed [and] abortion complications") (Exhibit C).<br><br>In that this case only concerns second trimester D&E procedures, Plaintiffs have either provided or will provide the names of all physicians currently providing D&E procedures at Plaintiff facilities. In doing so, Plaintiffs have either indicated or will indicate if they have been providing D&E's since January 1, 2016, and if they have been providing D&E's for a shorter period, when they began doing so. *See* Plaintiffs' Supplemental Responses.<br><br>Plaintiffs also have either provided or will provide aggregate data that is readily available regarding D&E procedures performed at Plaintiff facilities, including, to the extent it is available, any aggregate data regarding procedures performed at various gestational ages by physicians and/or the facility since January 1, 2016.  Depending on the Plaintiff facility, some, but not all of the data Plaintiffs can provide, may include the number of procedures performed by individual doctors. Plaintiffs, however, cannot agree to perform any type of chart by chart review to compile data. Such a review is not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1). |
| Interrogatory No. 3 - Identify each D & C procedure performed at your facility(ies) or by one of the individuals listed in Interrogatory No. 1 since 2011. Please provide your response in the attached spreadsheet or in a similarly-formatted spreadsheet.<br><br>Document Request No. 3 - Documents sufficient to identify each D & C Procedure performed at your facility(ies) or by one of the individuals listed in Interrogatory No. 1 since 2011. | While the number of D&C procedures performed has no relevance to this case which involves D&E procedures, Defendants already have access to such information for each facility from DSHS. *See* DSHS - Induced Abortion Report Form - Question No. 15 ("Type of Termination Procedure") (Exhibit A); *see also* Order Granting Unopposed Motion for an Order Authorizing the Disclosure and Use of Abortion-Related Documents, Information, and Data (Dkt. No. 56); Defendants' Initial Disclosures (identifying DSHS as having "information concerning the number of abortions performed [and] abortion complications") (Exhibit C).  Defendant Paxton's insistence on additional information matching the name of each physician to each procedure performed is not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1). |

| Request, Interrogatory, or 30(b)(6) Topic | Plaintiffs' Production |
|---|---|
| Interrogatory No. 4 - Identify each D & E procedure performed at your facility(ies) or by one of the individuals listed in Interrogatory No. 1 since 2011. Please provide your response in the attached spreadsheet or in a similarly-formatted spreadsheet.<br><br>Document Request No. 4 - Documents sufficient to identify each D & E Procedure performed at your facility(ies) or by one of the individuals listed in Interrogatory No. 1 since 2011. | Defendants already have access to such information for each facility from DSHS. *See* DSHS - Induced Abortion Report Form (Exhibit A); see also Order Granting Unopposed Motion for an Order Authorizing the Disclosure and Use of Abortion-Related Documents, Information, and Data (Dkt. No. 56); Defendants' Initial Disclosures (identifying DSHS as having "information concerning the number of abortions performed [and] abortion complications") (Exhibit C).<br><br>Moreover, Plaintiffs have either provided or will provide the names of all physicians currently providing D&E procedures at Plaintiff facilities. In doing so, Plaintiffs have either indicated or will indicate if they have been providing D&E's since January 1, 2016, and if they have been providing D&E's for a shorter period, when they began doing so. *See* Plaintiffs' Supplemental Responses.<br><br>Plaintiffs have also either provided or will provide aggregate data that is readily available regarding D&E procedures performed at Plaintiff facilities since January 1, 2016, including, to the extent it is available, any aggregate data regarding procedures performed at various gestational ages by physicians and/or the facility.  Depending on the Plaintiff facility, some, but not all of the data Plaintiffs can provide, may include the number of procedures performed by individual doctors. Plaintiffs, however, cannot agree to perform any type of chart by chart review to compile data. Such a review is not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1). |
| Interrogatory No. 5 - Identify each procedure, since 2011, in which digoxin was administered or used to attempt to cause fetal demise. Please provide your response in the attached spreadsheet or in a similarly-formatted spreadsheet.<br><br>Document Request No. 5 - Documents sufficient to identify each procedure, since 2011, in which digoxin was administered or used to attempt to cause fetal demise.<br><br>30(b)(6) Topic 2(a) - Numbers of procedures since 2011 in which digoxin . . . was administered or used to attempt to cause fetal demise. | Plaintiffs have either provided or will provide the names of all physicians currently providing D&E procedures at Plaintiff facilities.  In doing so, Plaintiffs have either indicated or will indicate if they have been providing D&E's since January 1, 2016, and if they have been providing D&E's for a shorter period, when they began doing so.  For each of the physicians on the list, Plaintiffs have also either indicated or will indicate whether they have used digoxin to attempt to cause fetal demise since January 1, 2016 through the present. *See* Plaintiffs' Supplemental Responses.<br><br>Plaintiffs have also either provided or will provide aggregate data that is readily available regarding |

| Request, Interrogatory, or 30(b)(6) Topic | Plaintiffs' Production |
|---|---|
| | D&E procedures performed at Plaintiff facilities since January 1, 2016, including, to the extent it is available, any aggregate data regarding procedures performed at various gestational ages by physicians and/or the facility.  Depending on the Plaintiff facility, some, but not all of the data Plaintiffs can provide, may include the number of procedures performed by individual doctors.  Plaintiffs, however, cannot agree to perform any type of chart by chart review to compile data.  Such a review is not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1).<br><br>Plaintiffs have also either provided or will provide the protocols for the use of digoxin at facilities that currently use digoxin, which show, among other things, the gestational age ranges at which digoxin is used, and can be compared with aggregate data, including data compiled by DSHS, regarding total numbers of abortions at various gestational ages to determine the approximate number of procedures in which digoxin was used. |
| Interrogatory No. 6 - Identify each procedure, since 2011, in which digoxin was administered or used to attempt to cause fetal demise and such administration or use of digoxin failed to cause fetal demise. Please provide your response in the attached spreadsheet or in a similarly-formatted spreadsheet.<br><br>Document Request No. 6 - Documents sufficient to identify each procedure, since 2011, in which digoxin was administered or used to attempt to cause fetal demise and such administration or use of digoxin failed to cause fetal demise.<br><br>30(b)(6) Topic 2(b) - Numbers of procedures since 2011 in which digoxin . . . was used, but failed to cause fetal demise. | Plaintiffs have either provided or will provide the names of all physicians currently providing D&E procedures at Plaintiff facilities.  In doing so, Plaintiffs have either indicated or will indicate if they have been providing D&E's since January 1, 2016, and if they have been providing D&E's for a shorter period, when they began doing so.  For each of the physicians on the list, Plaintiffs have also either indicated or will indicate whether they have used digoxin to attempt to cause fetal demise since January 1, 2016 through the present.  *See* Plaintiffs' Supplemental Responses.<br><br>For each of the physician Plaintiffs, Plaintiffs have also either provided or will provide information that they can recall as to the failure of digoxin to cause fetal demise.<br><br>Plaintiffs have also either provided or will provide aggregate data that is readily available regarding D&E procedures performed at Plaintiff facilities since January 1, 2016, including, to the extent it is available, any aggregate data regarding procedures performed at various gestational ages by physicians and/or the facility, the use of digoxin, and one versus two-day procedures at gestational ages prior to the routine use of overnight dilation. |

| Request, Interrogatory, or 30(b)(6) Topic | Plaintiffs' Production |
|---|---|
| | Depending on the Plaintiff facility, some, but not all of the data Plaintiffs can provide, may include the number of procedures performed by individual doctors.  Plaintiffs, however, cannot agree to perform any type of chart by chart review to compile data.  Such a review is not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1).<br><br>Plaintiffs have also either provided or will provide the protocols for the use of digoxin at facilities that currently use digoxin. |
| Interrogatory No. 9 - Identify each procedure, since 2011, in which umbilical cord transection was used to attempt to cause fetal demise. Please provide your response in the attached spreadsheet or in a similarly-formatted spreadsheet.<br><br>Document Request No. 9 - Documents sufficient to identify each procedure, since 2011, in which umbilical cord transection was used to attempt to cause fetal demise.<br><br>30(b)(6) Topic 2(a) - Numbers of procedures since 2011 in which . . . umbilical cord transection was administered or used to attempt to cause fetal demise. | Plaintiffs have either provided or will provide the names of all physicians currently providing D&E procedures at Plaintiff facilities.  In doing so, Plaintiffs have either indicated or will indicate if they have been providing D&E's since January 1, 2016, and if they have been providing D&E's for a shorter period, when they began doing so.  For each of the physicians on the list, Plaintiffs have also either indicated or will indicate whether they have attempted umbilical cord transection in order to cause fetal demise since January 1, 2016 through the present. *See* Plaintiffs' Supplemental Responses.<br><br>Plaintiffs have also either provided or will provide aggregate data that is readily available regarding D&E procedures performed at Plaintiff facilities, including, to the extent it is available, any aggregate data regarding procedures performed at various gestational ages by physicians and/or the facility. While Plaintiffs are providing information about the typical practices of the limited number of physicians who attempt demise through umbilical cord transection, more specific data if available at all, is not available without a chart by chart review.  Plaintiffs, however, cannot agree to perform any type of chart by chart review to compile data.  Such a review is not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1). |
| Interrogatory No. 10 - Identify each procedure, since 2011, in which umbilical cord transection was used to attempt to cause fetal demise and such umbilical cord transection failed to cause fetal demise. Please provide your response in the attached spreadsheet or in a similarly-formatted | Plaintiffs have either provided or will provide the names of all physicians currently providing D&E procedures at Plaintiff facilities.  In doing so, Plaintiffs have either indicated or will indicate if they have been providing D&E's since January 1, 2016, and if they have been providing D&E's for a |

| Request, Interrogatory, or 30(b)(6) Topic | Plaintiffs' Production |
|---|---|
| spreadsheet.<br><br>Document Request No. 10 - Documents sufficient to identify each procedure, since 2011, in which umbilical cord transection was used to attempt to cause fetal demise and such umbilical cord transection failed to cause fetal demise.<br><br>30(b)(6) Topic 2(b) - Numbers of procedures since 2011 in which . . . umbilical cord transection was used, but failed to cause fetal demise. | shorter period, when they began doing so.  For each of the physicians on the list, Plaintiffs have also either indicated or will indicate whether they have attempted umbilical cord transection in order to cause fetal demise since January 1, 2016 through the present. *See* Plaintiffs' Supplemental Responses.<br><br>Plaintiffs have also either provided or will provide aggregate data that is readily available regarding D&E procedures performed at Plaintiff facilities, including, to the extent it is available, any aggregate data regarding procedures performed at various gestational ages by physicians and/or the facility.  While Plaintiffs are providing information about the typical practices of the limited number of physicians who attempt demise through umbilical cord transection, more specific data if available at all, is not available without a chart by chart review.  Plaintiffs, however, cannot agree to perform any type of chart by chart review to compile data.  Such a review is not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1). |
| Interrogatory No. 11 – Identify each "physician[] in Texas" who has used "a hypodermic needle to inject a drug called digoxin transabdominally . . . or transvaginally . . . to attempt to cause fetal demise," as referenced in paragraph 50 of Plaintiffs' Complaint.<br><br>Document Request No. 11 - Documents sufficient to identify each "physician[] in Texas" who has used "a hypodermic needle to inject a drug called digoxin transabdominally . . . or transvaginally . . . to attempt to cause fetal demise," as referenced in paragraph 50 of Plaintiffs' Complaint.<br><br>30(b)(6) Topic 7(a) - "[P]hysicians" who use "a hypodermic needle to inject a drug called digoxin transabdominally . . . or transvaginally . . . to attempt to cause fetal demise," as referenced in paragraph 50 of Plaintiffs' Complaint. | Plaintiffs have either provided or will provide the names of all physicians currently providing D&E procedures at Plaintiff facilities.  In doing so, Plaintiffs have either indicated or will indicate if they have been providing D&E's since January 1, 2016, and if they have been providing D&E's for a shorter period, when they began doing so.  For each of the physicians on the list, Plaintiffs have also either indicated or will indicate whether they have used digoxin to attempt to cause fetal demise. *See* Plaintiffs' Supplemental Responses. |
| Interrogatory No. 12 - Identify each D & E procedure in which the physician "achieve[ed] adequate dilation and complete[d] the procedure in one visit," as referenced in paragraph 51 of Plaintiffs' Complaint. Please provide your response in the attached spreadsheet or in a | Plaintiffs have either provided or will provide the names of all physicians currently providing D&E procedures at Plaintiff facilities.  In doing so, Plaintiffs have either indicated or will indicate if they have been providing D&E's since January 1, 2016, and if they have been providing D&E's for a |

| Request, Interrogatory, or 30(b)(6) Topic | Plaintiffs' Production |
|---|---|
| similarly-formatted spreadsheet.<br><br>Document Request No. 12 - Documents concerning any D & E procedure in which the physician "achieve[ed] adequate dilation and complete[d] the procedure in one visit," as referenced in paragraph 51 of Plaintiffs' Complaint.<br><br>30(b)(6) Topic 7(b) - D&E procedures in which the physician "achieve[ed] adequate dilation and complete[d] the procedure in one visit," as referenced in paragraph 51 of Plaintiffs' Complaint. | shorter period, when they began doing so. *See* Plaintiffs' Supplemental Responses.<br><br>Plaintiffs have also either provided or will provide aggregate data that is readily available regarding D&E procedures performed at Plaintiff facilities, including, to the extent it is available, any aggregate data regarding procedures performed at various gestational ages by physicians and/or the facility, the use of digoxin, and one versus two-day procedures at gestational ages prior to the routine use of overnight dilation.  Depending on the Plaintiff facility, some, but not all of the data Plaintiffs can provide, may include the number of procedures performed by individual doctors. Plaintiffs, however, cannot agree to perform any type of chart by chart review to compile data. Such a review is not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1).<br><br>Plaintiffs have also either provided or will provide the protocols for dilation for procedures at 14.0 weeks LMP or later at Plaintiff facilities, which show, among other things, the gestational age ranges at which one-day and two-day dilation are generally used, and can for some Plaintiffs be compared with aggregate data, including data compiled by DSHS, regarding total numbers of abortions at various gestational ages to determine the approximate number of procedures in which one-day and two-day dilation were used. |
| Interrogatory No. 15 - Identify every procedure in which a complication has arisen from the administration or use of digoxin to attempt to cause fetal demise. In your answer, include the nature of the complication(s) experienced and a description of the care administered to treat each complication. Please provide your response in the attached spreadsheet or in a similarly-formatted spreadsheet.<br><br>Document Request No. 15 - Documents concerning each procedure in which a complication has arisen from the administration or use of digoxin to attempt to cause fetal demise.<br><br>30(b)(6) Topic 3(b) - Procedures in which one or more complications has arisen from the | The State already has access to information regarding serious complications from DSHS.  *See* DSHS - Induced Abortion Report Form - Question No. 17 ("Complication(s) of Abortion") (Exhibit A); DSHS - Abortion Complications Reporting (Exhibit B); *see also* Order Granting Unopposed Motion for an Order Authorizing the Disclosure and Use of Abortion-Related Documents, Information, and Data (Dkt. No. 56); Defendants' Initial Disclosures (identifying DSHS as having "information concerning the number of abortions performed [and] abortion complications") (Exhibit C).<br><br>To the extent that Plaintiffs chart any other complications resulting from the administration of digoxin to cause fetal demise, that information |

| Request, Interrogatory, or 30(b)(6) Topic | Plaintiffs' Production |
|---|---|
| administration or use of digoxin, KCl, or umbilical cord transection. | could only be obtained from a chart by chart review. Plaintiffs, however, cannot agree to perform any type of chart by chart review to compile data. Such a review is not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1). *See* Plaintiffs' Supplemental Responses.<br><br>For each of the physician Plaintiffs, Plaintiffs have also either provided or will provide information that they can recall as to complications from digoxin. |
| Interrogatory No. 16 - Identify each procedure in which digoxin "fail[ed] to cause fetal demise in the expected period of time after the injection," as referenced in paragraph 54 of Plaintiffs' Complaint. Please provide your response in the attached spreadsheet or in a similarly-formatted spreadsheet.<br><br>Document Request No. 16 - Documents concerning each procedure in which digoxin "fail[ed] to cause fetal demise in the expected period of time after the injection," as referenced in paragraph 54 of Plaintiffs' Complaint.<br><br>30(b)(6) Topic 7(d) - Procedures in which digoxin or KCl "fail[ed] to cause fetal demise in the expected period of time after the injection," as referenced in paragraph 54 of Plaintiffs' Complaint. | To the extent that Plaintiffs chart cases in which digoxin failed to cause demise within the expected time period, that information could only be obtained from a chart by chart review. Plaintiffs, however, cannot agree to perform any type of chart by chart review to compile data. Such a review is not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1). *See* Plaintiffs' Supplemental Responses.<br><br>For each of the physician Plaintiffs, Plaintiffs have also either provided or will provide information that they can recall as to the failure of digoxin to cause fetal demise. |
| Interrogatory No. 18 - Identify each D & E procedure in which a patient was contraindicated for the use or administration of digoxin for the purpose of attempting to cause fetal demise. Please provide your response in the attached spreadsheet or in a similarly-formatted spreadsheet.<br><br>Document Request No. 17 - Documents concerning each D & E procedure in which a patient was contraindicated for the use or administration of digoxin for the purpose of attempting to cause fetal demise.<br><br>30(b)(6) Topic 3(c) - D&E procedures in which a patient was contraindicated for the use or administration of digoxin, KCl, or umbilical cord transection for the purpose of attempting to cause fetal demise. | To the extent that Plaintiffs chart cases in which digoxin was contraindicated, that information could only be obtained from a chart by chart review. Plaintiffs, however, cannot agree to perform any type of chart by chart review to compile data. Such a review is not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1). *See* Plaintiffs' Supplemental Responses.<br><br>For each of the physician Plaintiffs, Plaintiffs have also either provided or will provide information that they can recall as to any patients for whom digoxin was contraindicated.<br><br>Plaintiffs have also either provided or will provide protocols from facilities that currently use digoxin regarding patients who are contraindicated for the use of digoxin, to the extent such protocols are |

| Request, Interrogatory, or 30(b)(6) Topic | Plaintiffs' Production |
|---|---|
| | available. *See* Plaintiffs' Supplemental Responses. |
| <u>Interrogatory No 17</u> - Identify each procedure in which any individual has "administer[ed] [a] second injection[] of digoxin" in an attempt to cause fetal demise, as referenced in paragraph 54 of Plaintiffs' Complaint. Please provide your response in the attached spreadsheet or in a similarly-formatted spreadsheet.<br><br><u>Document Request No. 18</u> - Documents concerning any procedure in which more than one injection of digoxin was administered, as referenced in paragraph 54 of Plaintiffs' Complaint.<br><br><u>Document Request No. 28</u> - Documents concerning any D & E procedure in which an individual has "administer[ed] [a] second injection[] of digoxin" in an attempt to cause fetal demise, as referenced in paragraph 54 of Plaintiffs' Complaint.<br><br><u>30(b)(6) Topic 7(e)</u> - Procedures in which any individual has "administer[ed] [a] second injection[] of digoxin" in an attempt to cause fetal demise, as referenced in paragraph 54 of Plaintiffs' Complaint. | To the extent that Plaintiffs chart cases in which a second injection of digoxin was ever administered, that information could only be obtained from a chart by chart review. Plaintiffs, however, cannot agree to perform any type of chart by chart review to compile data.  Such a review is not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1).  *See* Plaintiffs' Supplemental Responses.<br><br>For each of the physician Plaintiffs, Plaintiffs have also either provided or will provide information that they can recall as to the failure of digoxin to cause fetal demise.<br><br>Plaintiffs have also either provided or will provide protocols from facilities that currently use digoxin regarding the use of a second dose of digoxin, to the extent such protocols are available and address using a second dose of digoxin.  *See* Plaintiffs' Supplemental Responses. |

**C.  Irrelevant Discovery Requests Regarding Abortion Inducing Drugs and the Names of Plaintiffs' Digoxin Vendors.**

Defendant Paxton has served a number of discovery requests that seek information

regarding drugs other than digoxin or KCl, and various requests seeking the identity of the

Plaintiff facilities' digoxin vendors and how much each Plaintiff facility has spent on digoxin.

Plaintiffs will again stipulate that they purchase digoxin and that a number of physicians use the

drug.  Nonetheless, those Plaintiffs for whom the Request is applicable are providing Defendants

with documents showing the amount they have spent on digoxin since January 1, 2016.

Plaintiffs object to producing documents and information about other drugs and abortion pricing

which has no relevance to this case.

| Request, Interrogatory, or 30(b)(6) Topic | Plaintiffs' Production |
|---|---|
| Interrogatory No. 20 - Identify each and every abortion-inducing drug, as defined in Texas Health & Safety Code § 171.061(2), that you have ever given, sold, dispensed, administered, provided, or prescribed in a manner that is not authorized by the "final printed label" approved by the United States Food and Drug Administration, as defined in Texas Health & Safety Code § 171.061(3).<br><br>Document Request No. 20 - Documents sufficient to identify each and every abortion-inducing drug, as defined in Texas Health & Safety Code § 171.061(2), that you have ever given, sold, dispensed, administered, provided, or prescribed in a manner that is not authorized by the "final printed label" approved by the United States Food and Drug Administration, as defined in Texas Health & Safety Code § 171.061(3).<br><br>30(b)(6) Topic 1(d) - The off-label use of medications at your facilities, clinics, offices, or ambulatory surgical centers during each year since 2011. | These requests about drugs other than digoxin or KCl have no relevance to this dispute, and Defendants have articulated no basis to seek this information here.  Indeed, by suggesting that physicians could avoid criminal prosecution under SB 8 by using digoxin or KCl, Defendants have conceded that doing so would not violate Texas Health & Safety Code § 171.061(3), rendering any requests on this topic irrelevant. |
| Interrogatory No. 21 - Identify all individuals or business from whom you have purchased digoxin since 2011. In your answer, list the date of the purchase and quantity of digoxin purchased.<br><br>Document Request No. 21 - Documents sufficient to identify all individuals or business from whom you have purchased digoxin since 2011. | These requests about the identity of digoxin vendors have no relevance to this dispute and Defendants have articulated no basis to seek this information here.  Moreover, disclosure of the identity of vendors could impose serious risks that third parties opposed to abortion could apply pressure to those vendors to cease dealing with Plaintiffs.[3] |
| Interrogatory No. 22 - State the total amount of money that you have spent purchasing digoxin during each year since 2011.<br><br>Document Request No. 22 - Documents concerning any purchases of digoxin by you or your affiliates, as applicable or by any other individual identified in the documents responsive to Request No. 1.<br><br>Document Request No. 26 - Documents identifying the total amount of money that you | While this has no relevance to the dispute, Plaintiffs have either provided or will provide the amount that Plaintiff clinics have spent to purchase digoxin from January 1, 2016 through the present, to the extent such information is readily available. *See* Plaintiffs' Supplemental Responses. |

---

[3] *See Whole Woman's Health v. Hellerstedt*, 231 F. Supp. 3d 218, 231-32 (W.D. Tex. 2017) (noting that vendors for abortion providers are vulnerable to harassment by anti-abortion activists), *appeal docketed*, No. 17-50154 (5th Cir. Mar. 1, 2017).

| Request, Interrogatory, or 30(b)(6) Topic | Plaintiffs' Production |
|---|---|
| have spent purchasing digoxin during each year since 2011.<br><br>30(b)(6) Topic 6(b) - The procurement of digoxin and KCl by you since 2011, including suppliers and amount spent. | |
| 30(b)(6) Topic 6(a) - Pricing information for a surgical abortion, including any discounts, incentives, reduced rates, or financial assistance offered to D&E patients or potential patients. | These requests about the pricing of surgical abortion have no relevance to this dispute and Defendants have articulated no basis to seek this information here.  First, the deposition topic is not limited to second trimester D&E procedures.  Second, the price of a D&E procedure is not relevant to any claim or defense in this action. |

**D. Requests for Planned Parenthood Email Communications.**

Notwithstanding counsel for Defendant Paxton's suggestion at the August 29, 2017 hearing before this Court that he is not seeking wide-ranging email discovery (Tr. at 56), he is. Plaintiffs object to these requests.  If an email production is required, it should be limited to a small number of specific custodians, through targeted search terms, with limited date ranges.

| Request, Interrogatory, or 30(b)(6) Topic |
|---|
| Document Request No. 23 - Documents concerning communications between you or your employees and Planned Parenthood Federation of America concerning Senate Bill 8. |
| Document Request No. 24 - Documents concerning communications between you or your employees and Planned Parenthood Federation of America concerning digoxin. |
| Document Request No. 25 - Documents concerning communications between you or your employees and Planned Parenthood Federation of America concerning dismemberment abortion laws or regulations. |

**E. Discovery Requests Which By Their Very Terms Seek Information and Documents Plaintiffs Have Already Provided to the State of Texas.**

Defendant Paxton now has access to the documents requested in the following requests. *See* Order Granting Unopposed Motion for an Order Authorizing the Disclosure and Use of Abortion-Related Documents, Information, and Data, dated August 25, 2017 (Dkt. No. 56).  His motion to compel these same documents from Plaintiffs is inexplicable.

| Request, Interrogatory, or 30(b)(6) Topic |
|---|
| <u>Document Request No. 30</u> - All complication forms submitted to the State of Texas concerning complications that were caused, or suspected to have been caused, in whole or in part by the administration of digoxin. |
| <u>Document Request No. 36</u> - Documents that you or any other individual identified in the documents responsive to Request No. 1 have provided to the State pursuant to State law reporting obligations, including any Intentional Termination of Pregnancy ("ITOP") forms and any complications reporting forms. |

**F.  Discovery Requests for Policies, Procedures, Protocols, and Other Standard Forms.**

For the following document requests, with respect to the D&E procedures at issue here,

Plaintiffs have either produced or will produce the requested policies, procedures, protocols,

form consent forms, and intent forms.  *See* Plaintiffs' Supplemental Responses.

| Request, Interrogatory, or 30(b)(6) Topic |
|---|
| <u>Document Request No. 31</u> - Policies, procedures, guidelines, instructions, affiliation standards, or documents concerning the use of digoxin by you or any other individual identified in the documents responsive to Request No. 1. |
| <u>Document Request No. 32</u> - Policies, procedures, guidelines, instructions, affiliation standards, or documents concerning determination as to the appropriate method for performing an abortion on a particular patient. |
| <u>Document Request No. 34</u> - All "intent forms" or other documents describing or concerning the process or specific methods employed in any abortions performed by you or any other individual identified in the documents responsive to Request No. 1. |
| <u>Document Request No. 35</u> - A copy of documents used to obtain informed consent to or waiver of liability for any abortion procedure from your patients, including consents and waivers related to any component of any abortion procedure. |
| <u>30(b)(6) Topic 2(e)</u> - The type and extent of training or other education required to allow a doctor to administer digoxin, potassium chloride ("KCl"), or use umbilical cord transection to cause fetal demise. |
| <u>30(b)(6) Topic 4(a) – (c)</u> - Policies, processes, or procedures concerning:<br>    -informed consent for the D&E procedure;<br>    -informed consent from patients for the use of digoxin, KCl, umbilical cord transection, or any other methods of causing fetal demise prior to a D&E; and<br>    -the use of intent statements by physicians prior to performing a second trimester abortion. |

| Request, Interrogatory, or 30(b)(6) Topic |
|---|
| 30(b)(6) Topic 5(a) – (d) - Training materials, polices, or educational materials concerning:<br>    - the use of digoxin, KCl, cord transection, or any other methods of causing fetal demise prior to a D&E;<br>    -compliance with the Partial-Birth Abortion Ban Act of 2003;<br>    -intraamniotic injections, intrafetal injections, or other pregnancy related injections; and<br>    -transabdominal injections, transcervical injections, or transvaginal injections, whether or not related to pregnancy. |

**G. Other Discovery Requests Over Which There Should Be No Dispute.**

For the following remaining document requests, interrogatories, and deposition topics,

Plaintiffs do not believe that there should be any dispute with Defendant Paxton.

| Request, Interrogatory, or 30(b)(6) Topic | Plaintiffs' Production |
|---|---|
| Interrogatory No. 7 - Identify each procedure, since 2011, in which potassium chloride was administered or used to attempt to cause fetal demise. Please provide your response in the attached spreadsheet or in a similarly-formatted spreadsheet.<br><br>Document Request No. 7 - Documents sufficient to identify each procedure, since 2011, in which potassium chloride was administered or used to attempt to cause fetal demise.<br><br>30(b)(6) Topic 2(a) - Numbers of procedures since 2011 in which . . . potassium chloride ("KCl") . . . was administered or used to attempt to cause fetal demise. | With respect to the interrogatory, Plaintiffs have responded that there are no such procedures.<br><br>With respect to the document request, there are no responsive documents.<br><br>With respect to the 30(b)(6) topic, there would be no testimony elicited. |
| Interrogatory No. 8 – Identify each procedure, since 2011, in which potassium chloride was administered or used to attempt to cause fetal demise and such administration or use of potassium chloride failed to cause fetal demise. Please provide your response in the attached spreadsheet or in a similarly-formatted spreadsheet.<br><br>Document Request No. 8 - Documents sufficient to identify each procedure, since 2011, in which potassium chloride was administered or used to attempt to cause fetal demise and such administration or use of potassium chloride failed to cause fetal demise. | With respect to the interrogatory, Plaintiffs have responded that there are no such procedures.<br><br>With respect to the document request, there are no responsive documents.<br><br>With respect to the 30(b)(6) topic, there would be no testimony elicited. |

| Request, Interrogatory, or 30(b)(6) Topic | Plaintiffs' Production |
|---|---|
| 30(b)(6) Topic 2(b) - Numbers of procedures since 2011 in which . . . KCl . . . was used, but failed to cause fetal demise. | |
| Interrogatory No. 13 - Identify each physician in Texas who "feel[s] that demise makes the procedure easier because the fetal tissue may soften as a result of demise," as referenced in paragraph 52 of Plaintiffs' Complaint.<br><br>Document Request No. 13 - Documents sufficient to identify each physician in Texas who "feel[s] that demise makes the procedure easier because the fetal tissue may soften as a result of demise," as referenced in paragraph 52 of Plaintiffs' Complaint.<br><br>30(b)(6) Topic 7(c) – Physicians who "feel that demise makes the procedure easier because the fetal tissue may soften as a result of demise," as referenced in paragraph 52 of Plaintiffs' Complaint. | Plaintiffs have either provided or will provide the names of all physicians currently providing D&E procedures at Plaintiff facilities.  In doing so, Plaintiffs have either indicated or will indicate if they have been providing D&E's since January 1, 2016, and if they have been providing D&E's for a shorter period, when they began doing so.  For each of the physicians on the list, Plaintiffs have also either indicated or will indicate for those physicians who have used digoxin to attempt to cause fetal demise, whether they believe that doing so makes the procedure easier.  *See* Plaintiffs' Supplemental Responses. |
| 30(b)(6) Topic 2(d) - The number of individuals employed in your facilities qualified to administer digoxin, potassium chloride ("KCl"), or use umbilical cord transection to cause fetal demise. | Plaintiffs have either provided or will provide the names of all physicians currently providing D&E procedures at Plaintiff facilities.  In doing so, Plaintiffs have either indicated or will indicate if they have been providing D&E's since January 1, 2016, and if they have been providing D&E's for a shorter period, when they began doing so.  For each of the physicians on the list, Plaintiffs have either indicated or will indicate whether they have used digoxin to attempt to cause fetal demise since January 1, 2016 through the present and whether they have attempted umbilical cord transection in order to cause fetal demise since January 1, 2016 through the present. |
| Interrogatory No. 14 - Identify all complications that you allege can arise from the administration or use of digoxin to attempt to cause fetal death.<br><br>Document Request No. 14 - Documents you contend support your allegation that complications can arise from the administration or use of digoxin to attempt to cause fetal death.<br><br>30(b)(6) Topic 3(a) - Complications that you allege can arise from the administration or use of | With respect to the interrogatory, Plaintiffs have fully responded with a list of potential complications from the use of digoxin.<br><br>With respect to the document request, Plaintiffs have either provided or will provide the consent forms used by Plaintiff facilities that currently attempt to induce demise through the administration of digoxin which list potential complications.  *See* Plaintiffs' Supplemental Responses. |

| Request, Interrogatory, or 30(b)(6) Topic | Plaintiffs' Production |
|---|---|
| digoxin, KCl, or umbilical cord transection to attempt to cause fetal demise. | With respect to the 30(b)(6) topic, the potential complications that can arise form KCl and umbilical cord transection are well known, and Plaintiffs have either provided or will provide the consent forms which identify potential complications.  Moreover, Defendnats could seek this information through an interrogatory, as they did with respect to complications from digoxin, rather than through seven wasteful 30(b)(6) depositions. |
| Interrogatory No. 19 – Identify each physician in Texas who "do[es] not use digoxin to cause fetal demise for fear of prosecution under [Texas Health & Safety Code § 171.063]," as referenced in paragraph 57 of Plaintiffs' Complaint. <br><br> Document Request No. 19 - Documents sufficient to identify each physician in Texas who "do[es] not use digoxin to cause fetal demise for fear of prosecution under [Texas Health & Safety Code § 171.063]," as referenced in paragraph 57 of Plaintiffs' Complaint. <br><br> 30(b)(6) Topic 7(f) - Physicians who "do not use digoxin to cause fetal demise for fear of prosecution under [Texas Health & Safety Code § 171.063]," as referenced in paragraph 57 of Plaintiffs' Complaint. | Plaintiffs have either provided or will provide the names of all physicians currently providing D&E procedures at Plaintiff facilities.  In doing so, Plaintiffs have either indicated or will indicate if they have been providing D&E's since January 1, 2016, and if they have been providing D&E's for a shorter period, when they began doing so.  For each of the physicians on the list, Plaintiffs have either indicated or will indicate which of the named physicians do not use digoxin because they believe that doing so might violate Tex. Health & Safety Code § 171.063.  *See* Plaintiffs' Supplemental Responses. |
| Interrogatory No. 23 - Identify each individual with knowledge of the abortion procedures used at your facilities, clinics, offices, ambulatory surgical centers, or other locations, who was not otherwise identified in response to Interrogatory No. 1. <br><br> Document Request No. 27 - Documents sufficient to identify each individual with knowledge of the abortion procedures used at your facilities, clinics, offices, ambulatory surgical centers, or other locations, who was not otherwise identified in response to Interrogatory No. 1. | On August 25, 2017, Defendants served their initial disclosures identifying over sixty physicians and staff members at abortion clinics in Texas many of whom are unaffiliated with Plaintiffs. <br><br> On August 28, 2017, Plaintiffs served their initial disclosures setting forth each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses. <br><br> Moreover, Plaintiffs have either provided or will provide the names of all physicians currently providing D&E procedures at Plaintiff facilities. |
| Document Request No. 29 - Documents concerning the clinical management guidelines defined by the American Congress of Obstetricians | Plaintiffs would not have any documents that are responsive other than the clinical management guidelines themselves, which are publicly |

| Request, Interrogatory, or 30(b)(6) Topic | Plaintiffs' Production |
|---|---|
| and Gynecologists Practice Bulletin as those guidelines existed on January 1, 2013, as referenced in Texas Health & Safety Code § 171.063(b). | accessible and Defendants likely also have. |
| Document Request No. 33 - Documents, articles, treatises, books, papers, publications, peer-reviewed literature, scientific materials, or other documents in your possession, custody, or control concerning the use of digoxin to cause fetal demise. | Plaintiffs will provide citations to any materials relied on by their experts on the expert disclosure deadline, once set. |
| 30(b)(6) Topic 1(c) - The type, make, model, features, and uses for imaging equipment, instruments, and/or devices utilized during a surgical abortion. | Defendnats could seek this information through an interrogatory rather than through seven wasteful 30(b)(6) depositions. |
| 30(b)(6) Topic 2(c) - Procedures since 2011 in which any other method of causing fetal demise was utilized or attempted prior to the removal of fetal tissue. | Plaintiffs are aware of no other methods of causing fetal demise that have been in use since 2011 in Texas other than digoxin, KCl, or umbilical cord transection |
| 30(b)(6) Topic 3(d) - Complications that can arise from the D&E procedure. | The potential complications that can arise form a D&E procedure are well known, and Plaintiffs have either provided or will provide the consent forms which identify potential complications. Moreover, Defendnats could seek this information through an interrogatory rather than through seven wasteful 30(b)(6) depositions. |
| 30(b)(6) Topic 6(c) - Record-keeping policies and procedures related to abortions, including state reporting requirements, the nature of information recorded about each procedure, the methods by which abortion-related information is recorded and how such is stored, and the individuals responsible for making and maintaining such records. | Plaintiffs have described each facility's record keeping practices. *See* Plaintiffs' Supplemental Responses. |

## III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendant Paxton's motion to compel be denied.

Dated:  September 5, 2017

Respectfully submitted,


 _/s/ Patrick J. O'Connell_____
Patrick J. O'Connell
Texas Bar No. 15179900
Law Offices of Patrick J. O'Connell PLLC
2525 Wallingwood, Bldg. 14
Austin, Texas 78746
(512) 852-5918
pat@pjofca.com

*Attorney for all Plaintiffs*

Janet Crepps
Molly Duane
Center for Reproductive Rights
199 Water St. 22nd Floor
New York, NY 10038
(864) 962-8519 (Janet Crepps)
(917) 637-3631 (Molly Duane)
jcrepps@reprorights.org
mduane@reprorights.org

J. Alexander Lawrence
Morrison & Foerster LLP
250 W. 55th Street
New York, NY 10019
(212) 336-8638
alawrence@mofo.com

*Attorneys for Plaintiffs Whole Woman's Health,*
*Alamo City Surgery Center, Southwestern Women's*
*Surgery Center, Nova Health Systems, Curtis Boyd,*
*M.D., Jane Doe, M.D., Bhavik Kumar, M.D., and*
*Alan Braid, M.D.*

Melissa Cohen
Planned Parenthood Federation of America
123 William Street
New York, NY 10038
(212) 261-4649
melissa.cohen@ppfa.org

*Attorney for Plaintiffs Planned Parenthood Center
For Choice, Planned Parenthood of Greater Texas
Surgical Health Services, and Planned Parenthood
South Texas Surgical Center*

**CERTIFICATE OF SERVICE**

I certify that on this 5th day of September 2017, I electronically filed a copy of the above

document with the Clerk of the Court using the CM/ECF system, and personally served all

Defendants.


_/s/ Patrick J. O'Connell_____
Patrick J. O'Connell