IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| WHOLE WOMAN'S HEALTH, et al., | ) |
| | ) |
| Plaintiffs, | ) CIVIL ACTION |
| | ) |
| v. | ) CASE NO. 1:17-CV-0690-LY |
| | ) |
| KEN PAXTON, et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' MOTION FOR ORDER PRESERVING CONFIDENTIAL STATUS**

Pursuant to Federal Rule of Civil Procedure 26(c), Local Rule CV-26, and paragraph 11 of the Confidentiality and Protective Order in this case, ECF No. 55, Plaintiffs move this Court for an order preserving the confidential designations for certain documents produced in discovery. The documents at issue identify Plaintiffs' physicians who provide second-trimester abortions and describe their individual abortion practices. Physicians who provide abortion, particularly those who provide second-trimester abortion, face significant risks of anti-abortion harassment and violence. Protecting their identities and how they provide abortions from public disclosure is necessary to protect them from harm, and maintaining the documents at issue as confidential will not inhibit Defendants' ability to defend the case. Plaintiffs have no objection to public versions of the documents being used as long as the names of the physicians (except the names of the named Plaintiff physicians) are redacted.

Plaintiffs have conferred in good faith with Defendants' counsel in order to resolve this dispute, but the parties have been unable to reach agreement. Plaintiffs separately file the disputed documents under seal for the Court's review. *See* Exs. 1–7 to Pls.' Unopposed Mot. to Seal Exhibits, ECF No. 85.

## BACKGROUND

In response to Defendants' numerous written discovery requests, each of the Plaintiff entities separately provided discovery responses with an "Exhibit A," a chart which includes: (1) the name of each physician who currently provides dilation and evacuation ("D&E") procedures at Plaintiffs' health centers; (2) the date when the physician started doing D&Es at Plaintiffs' health centers if after January 1, 2016; (3) whether the physician has used digoxin for the purpose of attempting to cause fetal demise in Texas, and if so, beginning at what gestational age; (4) whether the physician thinks digoxin makes the D&E procedure easier, and if so, beginning at what gestational age; (5) whether the physician does not use digoxin because of a concern doing so may violate Texas Health & Safety Code § 171.063, and (6) whether the physician uses umbilical cord transection for the purpose of attempting to cause fetal demise in Texas. *See* Sealed Exhibits 1–7. Pursuant to the Confidentiality and Protective Order, Plaintiffs marked these charts "Subject to Protective Order: Confidential." *Id.*

Defendants have objected to these confidentiality designations.[1] Plaintiffs proposed resolving those objections through the use of a revised exhibit that merely redacted the names of the individual physicians, but could otherwise be used in this case without restrictions, but Defendants maintained their objection to any assertion of confidentiality over the documents.

## ARGUMENT

Under Federal Rule 26(c) and Local Rule CV-26(c), the Court may enter a protective order upon good cause shown. *E.g.*, *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985); *Zadeh v. Robinson*, No. 1:15-CV-598-RP, 2017 WL 532315, at *1 (W.D. Tex. Feb. 9, 2017). In

---

[1] While Defendants have not objected to the designation of the Exhibit A chart provided by Plaintiff Planned Parenthood Center for Choice as confidential, Plaintiffs include that document in this motion out of an abundance of caution.

addition, this Court's Confidentiality and Protective Order requires the filing of this motion to preserve the confidentiality designations to which a party has objected. Confidentiality and Protective Order at ¶ 11. The confidential and sensitive nature of the information contained in the charts provides more than sufficient "good cause" for an order maintaining the charts' confidentiality designations.

Aside from identifying the physicians who provide D&E procedures at Plaintiffs' facilities, the disputed charts specifically identify each physician's D&E practices (and therefore the clinical practices at Plaintiffs' facilities), including when the physician started providing D&Es in Texas and whether she or he uses digoxin or umbilical cord transection. The "connection between [identifying] information and some other detail—a statement, an event, or otherwise—which the individual would not wish to be publicly disclosed" is what is concerning and worthy of protection from disclosure. *Halloran v. Veterans Admin.*, 874 F.2d 315, 321 (5th Cir. 1989); *see also Harbolt v. Dep't of State*, 616 F.2d 772, 774 (5th Cir. 1980) ("Nothing could be more personal than an individual's name . . . when linked with the stigma of incarceration abroad."). The information contained within the Exhibit A charts is not in the public domain, and in fact Plaintiffs take affirmative steps to maintain the confidentiality of this information, including requiring their physicians, employees, contractors and vendors to sign confidentiality agreements governing clinical operations and medical practices. Decl. of Kenneth S. Lambrecht in Supp. of Mot. for Order Preserving Confidential Status ¶¶ 3–5, attached hereto as Ex. A; Decl. of Jeffrey Hons in Supp. of Mot. for Order Preserving Confidential Status ¶¶ 3–4, attached hereto as Ex. B; Decl. of Melaney Linton in Supp. of Mot. for Order Preserving Confidential Status ("Linton Decl.") ¶¶ 3–5, attached hereto as Ex. C. Under the protective order, such proprietary information that is not in

the public domain may be marked "Confidential," and Plaintiffs have therefore properly marked the Exhibit A charts.

Furthermore, the public disclosure of the identities of the individual physicians who provide second-trimester abortion along with the specifics of their abortion practices could subject Plaintiffs' physicians to significant physical and professional repercussions. Providers of abortion, and in particular providers of second-trimester abortions, have been specifically targeted for hateful antiabortion violence and harassment. For instance, Dr. George Tiller was tragically targeted and assassinated in 2009 precisely because he provided later term abortions. *See State v. Roeder*, 336 P.3d 831, 838 (2014).[2]

More recently, there has been a sharp uptick in violence following the smear campaign against Planned Parenthood that began with false and misleading videos released in the summer of 2015, including the deadly attack on a Planned Parenthood health center in Colorado Springs, Colorado, that resulted in the killing of three individuals and injuring of another nine.[3] *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-cv-00236-WHO, 2016 WL 5946858, at *2 (N.D. Cal. Sept. 30, 2016) ("As a result of defendants'. . . 'illegal recordings and the video smear campaign,' [defendants have] put the safety and security of Planned Parenthood's

---

[2] In total, there have been at least eleven murders and twenty-six attempted murders related to antiabortion violence. *See* Nat'l Abortion Fed'n, *2016 Violence & Disruption Statistics* 3, https://5aa1b2xfmfh2e2mk03kk8rsx-wpengine.netdna-ssl.com/wp-content/uploads/2016-NAF-Violence-and-Disruption-Statistics.pdf ("NAF 2016"). In 2016 alone, there were over 500 violent incidents, as well as nine bomb threats, 580 incidents of clinic obstruction, and 869 incidents of hate mail or harassing calls. *Id.* at 6; *see also* Feminist Majority Found., *2016 National Clinic Violence Survey*, 5 chart 1 (Feb. 2017), http://www.feminist.org/anti-abortion-violence/images/2016-national-clinic-violence-survey.pdf (showing increase in reported severe violence and threats from 19.7% in 2014 to 34.2% in 2016).
[3] Sarah Kaplan, *'I'm a Warrior for the Babies' Planned Parenthood Suspect Declares in Court*, Wash. Post (Dec. 10, 2015), https://www.washingtonpost.com/news/morning-mix/wp/2015/12/10/im-a-warrior-for-the-babies-planned-parenthood-suspect-declares-in-court/?utm_term=.237e17292827.

personnel and patients at serious risk, as 'witnessed most horrifically' in the shootings at a Planned Parenthood health center in Colorado Springs on November 27, 2015."); *see also Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, No. 15-CV-03522-WHO, 2016 WL 454082, at *11 (N.D. Cal. Feb. 5, 2016) ("Incidents of harassment and violence directed at abortion providers increased nine fold in July 2015, over similar incidents in June 2014. The incidents continued to sharply rise in August 2015. The FBI has also reported seeing an increase in attacks on reproductive health care facilities. Since July 2015, there have also been four incidents of arson at Planned Parenthood and NAF-member facilities." (citations omitted)), *aff'd*, 685 Fed. Appx. 623 (9th Cir. Mar. 29, 2017); *see also* First Am. Compl. for Damages & for Decl. & Inj. Relief ¶ 140, *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, Case No. 3:16-cv-00236-WHO (N.D. Cal. filed Mar. 24, 2016), ECF No. 58-1 (detailing threats to Texas Planned Parenthood staff, including that "they should be publicly executed"; "Sick bastards should be killed. All of them."; "These people need executed and their body parts sold for charity."; "I really hope it gets bombed and every abortion supporter gets publicly lynched by lynch mobs."); *see also id.* ¶ 130, 135, 138, 142 (describing other threats or acts of violence against Planned Parenthood entities and their staff). There have been, as well, numerous criminal investigations of arson attacks against Texas abortion providers—many of which remain open.[4] Plaintiffs' physicians have been direct targets of this harassment and violence. *E.g.*, Linton Decl. ¶ 6.

While significant harm could come to Plaintiffs' physicians who provide second trimester abortion should their identities and the specifics of their abortion practice become public, Defendants have not identified any harm that they will suffer from the "Confidential" designation

---

[4] Nat'l Abortion Fed'n, *Violence Statistics & History*, https://prochoice.org/ education-and-advocacy/violence/violence-statistics-and-history/ (last accessed Aug. 15, 2017).

of the Exhibits, nor can they. Defendants may file the full documents under seal, and, as Plaintiffs have proposed in seeking to resolve the matter, may use the information contained in them without restrictions so long as they do not publicly connect that information to the individual physicians identified in the Exhibit, for example, by redacting the physician names in publicly filed documents. Plaintiffs do not object to the names of the named plaintiff physicians, Drs. Boyd, Braid, Wallace and Kumar, being publicly filed.

Defendants will point out that the physicians identified in the challenged documents are publicly known as abortion providers. Nevertheless, the fact that they provide second-trimester abortions and the details of their abortion practices are not publicly known. Indeed, Plaintiffs reached agreement with Defendants on the terms of the protective order, rather than seeking relief from the Court, with the understanding that they could designate certain sensitive information about their physicians as confidential and protect it from public disclosure.

## CONCLUSION

For these reasons, Plaintiffs respectfully request an order requiring Defendants to redact the physician names, except for the names of the named Plaintiff physicians, that appear in the Exhibit A charts before publicly filing or otherwise using them.

Dated: September 19, 2017

                                            Respectfully submitted,

                                            */s/ Patrick J. O'Connell*
                                            Patrick J. O'Connell
                                            Texas Bar No. 15179900
                                            Law Offices of Patrick J. O'Connell PLLC
                                            2525 Wallingwood, Bldg. 14
                                            Austin, Texas 78746
                                            (512) 852-5918
                                            pat@pjofca.com

                                            *Attorney for all Plaintiffs*

Janet Crepps*
Molly Duane*
Center for Reproductive Rights
199 Water St. 22nd Floor
New York, NY 10038
(864) 962-8519 (Janet Crepps)
(917) 637-3631 (Molly Duane)
jcrepps@reprorights.org
mduane@reprorights.org

J. Alexander Lawrence*
Morrison & Foerster LLP
250 W. 55th Street
New York, NY 10019
(212) 336-8638
alawrence@mofo.com

*Attorneys for Plaintiffs Whole Woman's Health, Alamo City Surgery Center, Southwestern Women's Surgery Center, Nova Health Systems, Curtis Boyd, M.D., Robin Wallace, M.D., Bhavik Kumar, M.D., and Alan Braid, M.D.*

Melissa Cohen*
Planned Parenthood Federation of America
123 William Street
New York, NY 10038
(212) 261-4649
melissa.cohen@ppfa.org
* Admitted pro hac vice

*Attorney for Plaintiffs Planned Parenthood Center for Choice, Planned Parenthood of Greater Texas Surgical Health Services, and Planned Parenthood South Texas Surgical Center*

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 19, 2017 a copy of the foregoing has been served upon all counsel of record in this action by electronic service through the Court's CM/ECF system.

*/s/ Melissa A. Cohen*
Melissa A. Cohen