```
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF TEXAS
 2                          AUSTIN DIVISION

 3   WHOLE WOMAN'S HEALTH, PLANNED PARENTHOOD CENTER FOR    ) AU:17-CV-00690-LY
     CHOICE, PLANNED PARENTHOOD OF GREATER TEXAS SURGICAL   )
 4   HEALTH SERVICE, PLANNED PARENTHOOD SOUTH TEXAS SURGICAL)
     CENTER, ALAMO CITY SURGERY CENTER PLLC, SOUTHWESTERN   )
 5   WOMEN'S SURGERY CENTER, NOVA HEALTH SYSTEMS, INC.,     )
     CURTIS BOYD M.D., JANE DOE, M.D., M.A.S.,              )
 6   BHAVIK KUMAR, M.D., M.P.H., ALAN BRAID, M.D.,          )
     ROBIN WALLACE, M.D., M.A.S.,                           )
 7                                                          )
        Plaintiffs,                                         )
 8                                                          )
     v.                                                     ) AUSTIN, TEXAS
 9                                                          )
     KEN PAXTON, MARGARET MOORE, NICHOLAS LAHOOD,           )
10   JAIME ESPARZA, FAITH JOHNSON, SHAREN WILSON,           )
     RICARDO RODRIGUEZ JR., ABELINO REYNA, KIM OGG,         )
11                                                          )
        Defendants.                                         ) SEPTEMBER 20, 2017
12
              *********************************************
13                TRANSCRIPT OF TELEPHONE CONFERENCE
                    BEFORE THE HONORABLE LEE YEAKEL
14            *********************************************

15   FOR THE PLAINTIFFS:   JANET CREPPS (TELEPHONIC)
                           MOLLY DUANE (TELEPHONIC)
16                         CENTER FOR REPRODUCTIVE RIGHTS
                           199 WATER STREET, 22ND FLOOR,
17                         NEW YORK, NEW YORK 10019

18                         J. ALEXANDER LAWRENCE (TELEPHONIC)
                           MORRISON & FOERSTER, LLP
19                         250 WEST 55TH STREET
                           NEW YORK, NEW YORK 10019
20
                           MELISSA A. COHEN (TELEPHONIC)
21                         PLANNED PARENTHOOD FEDERATION OF AMERICA
                           123 WILLIAM STREET
22                         NEW YORK, NEW YORK 10038

23                         PATRICK J. O'CONNELL (TELEPHONIC)
                           LAW OFFICES OF PATRICK J. O'CONNELL PLLC
24                         225 WALLINGWOOD DR., BUILDING 14
                           AUSTIN, TEXAS 78746
25
```

```
 1  FOR THE DEFENDANTS:    EMILY L. ARDOLINO
                            BENJAMIN S. WALTON
 2                          TEXAS ATTORNEY GENERAL
                            GENERAL LITIGATION
 3                          300 WEST 15TH STREET, FLOOR 11
                            AUSTIN, TEXAS 78701
 4
                            DARREN MCCARTY
 5                          ADAM A. BIGGS
                            JOHN S. LANGLEY
 6                          OFFICE OF TEXAS ATTORNEY GENERAL
                            EXECUTIVE ADMINISTRATION
 7                          240 W. 14TH STREET, 7TH FLOOR
                            AUSTIN, TEXAS 78701
 8
                            CHRISTOPHER D. HILTON (TELEPHONIC)
 9                          ANDREW BOWMAN STEPHENS
                            OFFICE OF THE ATTORNEY GENERAL
10                          PO BOX 12548
                            AUSTIN, TEXAS 78711
11
    COURT REPORTER:        ARLINDA RODRIGUEZ, CSR
12                          501 WEST 5TH STREET, SUITE 4152
                            AUSTIN, TEXAS 78701
13                          (512) 391-8791

14

15

16

17

18

19

20

21

22

23

24  Proceedings recorded by computerized stenography, transcript

25  produced by computer.
```

```
14:01:19   1        (Open Court)

14:01:19   2            THE COURT:  Let me start with who's on the phone, and

14:01:24   3   tell me you are and who you represent so I know who I have.

14:01:31   4            MS. CREPPS:  Janet Crepps for the plaintiffs,

14:01:32   5   Your Honor.

14:01:33   6            THE COURT:  Anyone else on the phone?

14:01:36   7            MR. O'CONNELL:  Your Honor, this is Pat O'Connell.  I

14:01:38   8   just called in.

14:01:41   9            MR. HILTON:  Chris Hilton for the participating DAs.

14:01:49  10            MS. COHEN:  This the Melissa Cohen for the

14:01:51  11   plaintiffs.

14:01:51  12            MS. DUANE:  Molly Duane for the plaintiffs.

14:01:53  13            MR. LAWRENCE:  And Alex Lawrence for the plaintiffs,

14:01:55  14   Your Honor.

14:02:04  15            THE COURT:  All right.  And let me get who is here

14:02:07  16   for the defendants, please.

14:02:11  17            MS. ARDOLINO:  Emily Ardolino.

14:02:12  18            MR. MCCARTY:  Darren McCarty, Your Honor.

14:02:14  19            MR. BIGGS:  Adam Biggs, Your Honor.

14:02:16  20            MR. WALTON:  Ben Walton.

14:02:17  21            MR. LANGLEY:  John Langley.

14:02:19  22            MR. STEPHENS:  Andrew Stephens.

14:02:25  23            THE COURT:  Okay.  I got a call yesterday or the day

14:02:31  24   before, sometime recently, from the State telling me that we

14:02:36  25   had a problem still getting discovery worked out and could we
```

14:02:45   1   discuss it or have hearing on the motions.  I said yes.  I will

14:02:53   2   tell both of you that was not the invitation you thought it was

14:02:57   3   to start filing a whole lot more things.

14:03:00   4        I'm not really interested in very much of your prose.

14:03:04   5   I understand the arguments, so I don't want to hear any

14:03:15   6   advocacy today.  I just want you-all to answer my questions.  I

14:03:19   7   know that if the plaintiffs win this case, the world as we know

14:03:22   8   it is going to come to an end.  I know that if the defendants

14:03:25   9   win this case, the world as we know it is going to come to an

14:03:28   10  end.  I know that if I order any discovery, the world as we

14:03:32   11  know it is going to come to an end.  And I know that if I order

14:03:36   12  less than what people want, the world is going to come to an

14:03:39   13  end.  So I don't want your rhetoric.

14:03:42   14       I'm going to start, since the State requested this

14:03:45   15  hearing, with the State.  And I want the State to first tell me

14:03:56   16  which motion, if any, they want me to refer to first.

14:04:06   17       MS. ARDOLINO:  We'd like you to refer to Defendant's

14:04:10   18  Motion to Compel, which is --

14:04:11   19       THE COURT:  Well, maybe you just tell me what your

14:04:13   20  problem is without arguing it.

14:04:16   21       MS. ARDOLINO:  Sure.

14:04:17   22       THE COURT:  What do you want that you haven't gotten?

14:04:18   23       MS. ARDOLINO:  We have provided the Court with a

14:04:20   24  proposed order on this motion.

14:04:22   25       THE COURT:  No.  But I have not read it because it

14:04:24  1  was all I could do to squeeze in time to hear from you-all

14:04:28  2  today.

14:04:29  3          MS. ARDOLINO:  Understood.  So the contents of that

14:04:33  4  proposed order explicitly detail the very specific information

14:04:37  5  and documents that, after the 30(b)(6) depositions, we feel is

14:04:43  6  both readily accessible to Plaintiffs or, at the very least,

14:04:47  7  should have been readily accessible to plaintiffs over the

14:04:50  8  course of the past seven weeks that the discovery requests have

14:04:53  9  been pending.  And that we feel at this point, considering the

14:04:58 10  expedited nature of this trial, we -- we need to proceed.

14:05:05 11          And so we're -- we sent Plaintiffs a letter

14:05:09 12  requesting this specific information.  And it appears, based on

14:05:16 13  their response which we were provided just a couple of hours

14:05:20 14  ago, that they're basically lodging their same objections to

14:05:25 15  even this very culled down and very targeted request for

14:05:29 16  discovery.

14:05:33 17          Would Your Honor like me to proceed point by point,

14:05:36 18  or do you want me to just answer a question?

14:05:39 19          THE COURT:  I want you to tell me in very few words

14:05:44 20  what it is -- don't go through it chapter and verse --

14:05:49 21  generally what you need and why you need it, how it relates to

14:05:53 22  any issue in this case.  Don't argue it.  Just tell me your

14:05:56 23  opinion.  What do you need -- you can do it by categories or

14:06:00 24  what you have -- and why need it.  That's what I want to know.

14:06:06 25          MS. ARDOLINO:  So we are requesting the information

14:06:08  1    regarding physicians who have performed D&E procedures that is

14:06:16  2    readily accessible to the plaintiffs because they each maintain

14:06:21  3    databases, either through their billing records or their

14:06:24  4    medical record systems, that allow them to search for

14:06:29  5    procedures performed at certain gestational ages, which are

14:06:34  6    proxies for procedures that may fall within the scope of SB 8.

14:06:39  7    They all in some form or fashion have a way of creating

14:06:46  8    aggregated data or producing reports.  And, in fact, many of

14:06:49  9    them do it and have already done it in their regular course of

14:06:53  10   their business.

14:06:54  11          We want information related to Plaintiffs' specific

14:06:57  12   allegations regarding the use, the safety, and efficacy of

14:07:02  13   Digoxin and other types of fetal demise.  They have made

14:07:06  14   allegations in this case through their interrogatories and

14:07:09  15   their complaint that -- that some of them use Digoxin, that it

14:07:15  16   has particular efficacy rate.  And we are simply asking them

14:07:20  17   for the evidence that backs up those allegations.

14:07:27  18          And we have specifically targeted our discovery to

14:07:32  19   request, for example, only the medical records that -- for most

14:07:38  20   of the plaintiffs that show the -- where Digoxin or another

14:07:48  21   fetal demise technique was ineffective or whether a

14:07:52  22   complication arose.

14:07:53  23          And we know, again, based on the 30(b)(6)

14:07:56  24   depositions, we've also requested they -- virtually all of the

14:08:00  25   plaintiffs keep some form of a complications log where they can

| | | |
|---|---|---|
| 14:08:04 | 1 | refer to -- or complications database that they could use to |
| 14:08:09 | 2 | search for or easily refer to, you know, certain procedures. |
| 14:08:15 | 3 | They all have a way of very far short of, you know, |
| 14:08:21 | 4 | chart-by-chart-by-chart targeted identification of these |
| 14:08:27 | 5 | particular procedures. |
| 14:08:29 | 6 | THE COURT:  Okay.  Now, let me hear from whoever for |
| 14:08:32 | 7 | the defendants wants to respond to that, and tell me why you're |
| 14:08:37 | 8 | unwilling to provide the information that the State has |
| 14:08:39 | 9 | requested. |
| 14:08:41 | 10 | MS. CREPPS:  Your Honor, this is Janet Crepps for the |
| 14:08:43 | 11 | plaintiffs.  I think -- I know you have haven't had a chance to |
| 14:08:48 | 12 | review the letters that we attached to our filing earlier.  But |
| 14:08:52 | 13 | we are producing the aggregate data that is available, and we |
| 14:09:01 | 14 | have -- we will be producing a list of the actual physician |
| 14:09:06 | 15 | names going back to 2011.  But we will be producing any |
| 14:09:11 | 16 | remaining reports that provide the information that the |
| 14:09:15 | 17 | defendants are seeking. |
| 14:09:17 | 18 | But, in spite of the depositions last week, they seem |
| 14:09:23 | 19 | to think that there is data that can be provided without a |
| 14:09:28 | 20 | chart-by-chart review in response to their requests.  And that |
| 14:09:33 | 21 | is not true as to Digoxin complications, Digoxin |
| 14:09:41 | 22 | contraindications, Digoxin failures.  And so, in order to |
| 14:09:48 | 23 | respond to their interrogatories that ask for information on a |
| 14:09:52 | 24 | procedure-by-procedure basis related to two-day dilation or the |
| 14:09:59 | 25 | use of Digoxin, that information cannot be provided without a |

| | | |
|---|---|---|
| 14:10:04 | 1 | chart-by-chart review. |
| 14:10:06 | 2 | THE COURT:  All right.  Stop right there. |
| 14:10:08 | 3 | Ms. Ardolino, you have indicated you believe it can be provided |
| 14:10:14 | 4 | without a chart-by-chart review.  They have indicated they |
| 14:10:17 | 5 | cannot provide it.  How do I resolve this? |
| 14:10:20 | 6 | MS. ARDOLINO:  So I think there's a little bit of |
| 14:10:22 | 7 | discrepancy between the terminology.  I think that when |
| 14:10:25 | 8 | Plaintiffs say that they can't provide the information without |
| 14:10:28 | 9 | a chart-by-chart review, what they're saying is they can't |
| 14:10:31 | 10 | provide that information without actually looking at some |
| 14:10:34 | 11 | charts. |
| 14:10:35 | 12 | We know, based on the 30(b)(6) depositions, that they |
| 14:10:40 | 13 | have ways of locating within their records and identifying |
| 14:10:45 | 14 | particular information or smaller subsets of information that |
| 14:10:49 | 15 | they could then review in order to get the information that we |
| 14:10:52 | 16 | need.  So it's -- it's a little bit of a mischaracterization to |
| 14:10:58 | 17 | say that they need to look through every single chart that they |
| 14:11:02 | 18 | have in order to find it. |
| 14:11:03 | 19 | THE COURT:  All right.  Stop right there. |
| 14:11:04 | 20 | Ms. Crepps, you've heard what Ms. Ardolino has said? |
| 14:11:08 | 21 | MS. CREPPS:  Yes, Your Honor. |
| 14:11:09 | 22 | THE COURT:  Tell me where she's wrong. |
| 14:11:11 | 23 | MS. CREPPS:  There is some variation as to clinic. |
| 14:11:15 | 24 | But what the databases can tell you is the name of a patient |
| 14:11:20 | 25 | who has received a procedure at a gestational age.  For the |

14:11:26  1  older procedures, especially, that means getting boxes out of

14:11:32  2  storage and going through them and pulling those charts.  And

14:11:40  3  so it -- you may not have to pull every single chart out of the

14:11:44  4  box, but you're still going to have to get the box and pull the

14:11:48  5  individual patient charts.  So it remains very burdensome, and

14:11:52  6  there's very limited information available electronically.

14:11:58  7           THE COURT:  Well, let me tell you something.  I

14:12:01  8  understand the issues in this case, and I understand what the

14:12:05  9  Supreme Court talked about in the two *Carhart* cases that we've

14:12:09  10  previously discussed in this Court.  I understand what is going

14:12:14  11  to need to be in this record when I hear this case in November,

14:12:19  12  and I think I have a pretty good idea of what the Fifth Circuit

14:12:24  13  is going to want to see and what might be looked at if it goes

14:12:28  14  beyond that.

14:12:29  15           So what I need you two to help me with is how we get

14:12:33  16  that information, because we're still just sitting here

14:12:37  17  spinning our wheels on things that are germane to allegations

14:12:45  18  in the complaint and responses in the answer.  And we've got to

14:12:50  19  get beyond this point, and it's going to be a lot of trouble to

14:12:55  20  get beyond this point.  But the record needs to be made on

14:12:58  21  this.  This is where issue is joined in this case.

14:13:01  22           So what, Ms. Crepps, do you suggest?  Because I'm not

14:13:06  23  overly sympathetic to the plaintiffs' position on discovery at

14:13:09  24  this point.  So help me out of my dilemma.

14:13:15  25           MS. CREPPS:  I understand, Your Honor.  Well, one of

14:13:17  1   the problems is that they've asked for information going all

14:13:21  2   the way back to 2011.

14:13:25  3            THE COURT:  All right.  Stop right there.

14:13:26  4            Ms. Ardolino, is there any way we can solve that

14:13:29  5   problem?  Is it 2011 or nothing in your position?

14:13:33  6            MS. ARDOLINO:  Well, I'm glad that came up, because

14:13:35  7   we -- the plaintiffs have limited what they are agreeing to

14:13:41  8   produce to us to 2016.  We know that several of the plaintiffs'

14:13:46  9   clinics who do not currently use Digoxin used to use it prior

14:13:51 10   to that time.  Not only that, but we know that several of them

14:13:54 11   have logs of their Digoxin use from those -- those times or

14:14:00 12   portions of those times.  And they are refusing to provide them

14:14:04 13   to us even though they are readily -- readily available and are

14:14:09 14   kind of just a quick summary for at least periods of time when

14:14:12 15   Digoxin was in use.

14:14:14 16            We also know that they have reports that, for

14:14:17 17   example, Planned Parenthood of Greater Texas had to make

14:14:20 18   regarding Digoxin use to Planned Parenthood Federation of

14:14:24 19   America.  They are also refusing to provide that information to

14:14:27 20   us.  It is completely relevant, any of their use of Digoxin

14:14:32 21   which, again, dates back further than 2011.  But for the

14:14:36 22   purposes of this litigation, we think that 2011 and forward is

14:14:41 23   reasonable.

14:14:42 24            We are not asking for them in this order to produce

14:14:45 25   every single patient chart for every abortion procedure that

14:14:49  1   was done going back to 2011.  We are simply asking them to

14:14:53  2   identify any complications that they have -- I mean, they're

14:14:57  3   alleging that complications occur on account of the use of

14:15:00  4   Digoxin.  They have used it.  And they are refusing to provide

14:15:04  5   us with information showing that those complications actually

14:15:08  6   occurred.

14:15:10  7         And they have ready means to -- you know, it may take

14:15:14  8   following a few steps, looking at some records, identifying a

14:15:17  9   patient chart, and going back.  But it's far, far short of a

14:15:23  10  you know, chart-by-chart review through boxes and boxes of

14:15:26  11  information.  These are Plaintiffs' claims --

14:15:33  12        MS. COHEN:  Your Honor?  Your Honor, this is

14:15:34  13  Melissa Cohen for the plaintiff.

14:15:34  14        THE COURT:  Could you scream -- pardon me.  Could you

14:15:36  15  just scream a little louder into the telephone?  You just

14:15:40  16  interrupted and knocked everybody out of their chairs.  That's

14:15:44  17  what I -- that is what I do not want to hear in this hearing.

14:15:49  18  You were not called upon, so don't you interrupt.  I am hearing

14:15:54  19  Ms. Ardolino right now.  I will hear from the other side

14:15:58  20  shortly.

14:16:00  21        Go ahead, Ms. Ardolino.

14:16:02  22        MS. ARDOLINO:  Well, I think that actually -- you had

14:16:04  23  asked, Your Honor, why it's important that -- that Plaintiffs

14:16:08  24  provide information dating back to 2011, and I think that

14:16:13  25  summarizes the reasons why that particular information is

14:16:16   1   important.

14:16:16   2          THE COURT:  All right.  Now, Ms. Cohen, in a nice,

14:16:19   3   restrained voice, tell me what you were going to say.

14:16:22   4          MS. COHEN:  I apologize, Your Honor.  I didn't

14:16:24   5   realize the volume would be so loud in the courtroom.  It's

14:16:27   6   hard to tell from here in my office.

14:16:29   7          Your Honor, I just want to correct a representation

14:16:32   8   that Ms. Ardolino has just made.  The letter that we provided

14:16:35   9   earlier today did in fact agree to provide information going

14:16:39  10   back to 2011, including regarding prior Digoxin use at the one

14:16:43  11   Planned Parenthood affiliate that used it.  We agreed to

14:16:47  12   provide the annual reports.  We agreed to provide the Digoxin

14:16:51  13   log.  And so that's just simply incorrect.

14:16:52  14          The one thing we are unwilling to provide is medical

14:16:57  15   records, number one, and, number two, information that would

14:17:01  16   require going through chart by chart to provide responsive

14:17:08  17   information.  But we have agreed to provide all the aggregate

14:17:12  18   information regarding Digoxin complications that are -- that

14:17:15  19   isn't available.

14:17:15  20          THE COURT:  Why don't you tell me how you define

14:17:18  21   "medical records."  When you tell me you're not willing to

14:17:21  22   provide medical records and I look at this great amount of

14:17:27  23   pleadings and documents and things I received since this case

14:17:30  24   was filed, I'm having a hard time figuring out what's going to

14:17:35  25   be introduced in this trial and what's going to be looked at in

14:17:38  1  discovery that is not a medical record.  So tell me what you

14:17:41  2  mean by "we're not willing to provide medical records."

14:17:45  3        MS. COHEN:  Sure, Your Honor.  By medical record I

14:17:48  4  mean an individual patient's medical chart which would include

14:17:54  5  all of her demographic information, including her name, Social

14:17:59  6  Security number, address, her entire medical history, all the

14:18:02  7  information regarding her abortion procedure, et cetera.  What

14:18:07  8  I'm referring to there is the actual individual patient's

14:18:12  9  medical record.

14:18:13  10       To the extent the information is available in an

14:18:16  11  aggregate form, which it is and we have agreed to provide that,

14:18:22  12  that we are willing to provide because it does not go into

14:18:25  13  individual women's sensitive medical information and history.

14:18:39  14       THE COURT:  All right.  So, Ms. Ardolino, they say

14:18:44  15  that in their notice of filing and the letters that I have now

14:18:47  16  had an opportunity to skim through as we've sat here in this

14:18:51  17  hearing, they're willing to provide a large amount of things.

14:18:58  18  Where are you in this regard?  Have you had an opportunity to

14:19:00  19  review the letters?

14:19:02  20       MS. ARDOLINO:  In all fairness, Your Honor, I have

14:19:04  21  generally reviewed the letters, but I have not had the

14:19:06  22  opportunity to sit down point by point and match it up

14:19:09  23  specifically with what we are requesting in this -- in this

14:19:13  24  order.

14:19:14  25       It's my general understanding from having, again,

14:19:18  1  reviewed these -- superficially reviewed these letters that

14:19:21  2  most of -- I guess with the exception of the Planned Parenthood

14:19:25  3  plaintiffs or at least some of the Planned Parenthood

14:19:28  4  plaintiffs, most of the plaintiffs are refusing to provide

14:19:32  5  certain documents that go back to 2011, including their

14:19:38  6  policies and procedures relating to D&Es and Digoxin and

14:19:43  7  informed consent.  Those -- those are -- which are readily

14:19:47  8  accessible and they haven't made any argument that they are

14:19:50  9  not.

14:19:51  10       They -- with respect to actual medical records, we

14:19:57  11  have requested from all plaintiffs only those medical records

14:20:02  12  that evidence what their allegations -- the allegations that

14:20:07  13  they're making -- so when Digoxin was used and was found to be

14:20:11  14  ineffective and when -- when a complication arose on account of

14:20:17  15  Digoxin use.  Those are the records that would specifically

14:20:23  16  back up the allegations that they are making.

14:20:25  17       With respect to Whole Woman's Health and Nova and, I

14:20:32  18  believe -- there are so many plaintiffs.  I apologize.  I'll

14:20:38  19  double-check.  We have requested sort of a sample of, you know,

14:20:42  20  a period of time of medical records.  These are -- so, for

14:20:47  21  example, from Nova we have requested all of their D&E records.

14:20:52  22  This is -- they have reported that they do about 20 per year,

14:20:56  23  so this is a very small number of medical records to review.

14:21:00  24       One of the issues in this case, one of the

14:21:03  25  allegations that Plaintiff is making, is that using Digoxin

14:21:07   1   would extend the number of days needed to do a D&E procedure.

14:21:14   2   So we want to know how many of those procedures that would

14:21:20   3   potentially affect.  The plaintiffs, through the 30(b)(6)

14:21:24   4   depositions, have indicated that that is not the type of

14:21:28   5   record -- that's not in all cases the type of information that

14:21:34   6   they contain in readily accessible format.  So we have asked in

14:21:39   7   those cases for a sampling of medical records so that we can

14:21:43   8   actually look at the record and figure out what's going on.

14:21:47   9            With respect to Whole Woman's Health, for example,

14:21:50   10  we've asked for only those D&E records for the year 2017

14:21:54   11  because we feel like that's sufficient to get us that

14:21:56   12  information.

14:21:58   13           And, again, this is about proportionality.  We are

14:22:01   14  not asking for a whole bunch of extensive medical records.  We

14:22:05   15  have very specifically targeted portions or selections of

14:22:10   16  medical records that, based on the 30(b)(6) depositions, we

14:22:14   17  believe would not be unduly burdensome for some of the

14:22:17   18  plaintiffs to produce.

14:22:19   19           THE COURT:  Ms. Crepps?  Ms. Cohen?

14:22:22   20           MS. CREPPS:  Yes, Your Honor.  This is Janet Crepps.

14:22:28   21           Again, Your Honor, I can't underestimate the amount

14:22:35   22  of time it would take for us to not just collect these

14:22:40   23  documents, but we are extremely reluctant and it would be

14:22:45   24  highly unusual for us to have to produce individual medical

14:22:49   25  charts, especially in unredacted form.

| | | |
|---|---|---|
| 14:22:53 | 1 | And it -- for Whole Woman's Health, for example, we |
| 14:23:02 | 2 | have given the defendants aggregate numbers how many D&E |
| 14:23:06 | 3 | procedures have required more than one day.  So they have the |
| 14:23:09 | 4 | raw numbers.  There is nothing proportional about requiring us |
| 14:23:15 | 5 | to either produce the charts or produce them in unredacted form |
| 14:23:21 | 6 | for them to confirm the information that we've already given |
| 14:23:23 | 7 | them.  And so I do think that there is a problem with |
| 14:23:27 | 8 | proportionality here and do have grave concerns about handing |
| 14:23:32 | 9 | over unredacted medical charts. |
| 14:23:35 | 10 | THE COURT:  Well, nobody has ordered you to turn over |
| 14:23:37 | 11 | unredacted medical charts.  You know, we waste a lot of time |
| 14:23:43 | 12 | because you-all can't reach agreement on logical things.  For |
| 14:23:52 | 13 | instance, I have from you the Plaintiffs' motion for order |
| 14:23:56 | 14 | preserving confidential status.  And in that you state: |
| 14:24:01 | 15 | Plaintiffs have conferred in good faith with Defendants' |
| 14:24:04 | 16 | counsel in order to resolve these disputes, but the parties |
| 14:24:07 | 17 | have been unable to reach agreement. |
| 14:24:11 | 18 | Either Ms. Ardolino or Ms. Crepps, tell me why you |
| 14:24:17 | 19 | can't reach agreement on something as simple as preserving |
| 14:24:23 | 20 | confidentiality. |
| 14:24:26 | 21 | MS. ARDOLINO:  Sure.  I just want to state that -- |
| 14:24:30 | 22 | before I answer your question, that with respect to the medical |
| 14:24:33 | 23 | records, we are not asking them to produce medical records with |
| 14:24:36 | 24 | patients' identifying information unredacted.  And we're also |
| 14:24:40 | 25 | willing to cooperate with that -- with them on that.  It's in |

14:24:44  1  our protective order that -- that patient identifying

14:24:49  2  information may be redacted.  And so that's not at issue.

14:24:52  3       With respect to the order to predict confidentiality,

14:25:01  4  the plaintiffs have designated as confidential the majority of

14:25:05  5  the documents that they have produced to us so far.  Several of

14:25:08  6  these are copies of their blank medical records.  And I

14:25:11  7  apologize.  This is the motion that you're referring to,

14:25:14  8  correct?

14:25:15  9       THE COURT:  Well, I'm looking at Document Number 84

14:25:19  10  that was filed yesterday.

14:25:21  11       MS. ARDOLINO:  Okay.  I believe -- I believe that

14:25:24  12  we're on the same page, then.  The information that they are

14:25:29  13  seeking to protect includes blank medical record forms.  It

14:25:33  14  includes informed consent and information forms that are given

14:25:37  15  to patients, the blank ones.  It includes additional

14:25:45  16  information regarding the number of certain procedures

14:25:52  17  performed by certain providers, no patient information.

14:25:59  18       And, again, I am -- oh, I'm sorry.  Again, I was --

14:26:09  19  we're talking about the motion to preserve confidential status

14:26:16  20  of attachment A of their interrogatories.

14:26:18  21       THE COURT:  Well, let me go ahead here.

14:26:18  22       MS. ARDOLINO:  I apologize.  There's a lot going on

14:26:20  23  right now.

14:26:20  24       THE COURT:  Here is all they request:  The plaintiffs

14:26:24  25  request an order that their motion is granted and Defendants

14:26:30  1   shall not publicly file or otherwise use the exhibit A

14:26:36  2   charts --

14:26:37  3              I presume both sides know what the exhibit A charts

14:26:40  4   are.

14:26:41  5              MS. ARDOLINO:  Yes.

14:26:41  6              THE COURT:  -- provided by Plaintiffs regarding their

14:26:45  7   physicians' individual practices unless the physician names

14:26:50  8   that appear on the charts, except for the names of the named

14:26:55  9   plaintiff physicians, are redacted.

14:26:58  10             That seems really concise and simple.  So what is the

14:27:03  11  subject of disagreement in the form of that order involving

14:27:10  12  confidentiality, because that seems pretty clear to me?

14:27:17  13             MR. MCCARTY:  Your Honor, let me speak to this,

14:27:19  14  because this was actually a separate motion I don't think that

14:27:22  15  we've had a chance to respond to yet, and it wasn't the subject

14:27:25  16  of what we thought we were going to discuss today.

14:27:28  17             We will work with Plaintiffs concerning Exhibit A and

14:27:33  18  the confidentiality of the doctors' names on Exhibit A.  That

14:27:37  19  may not be a subject that this Court needs to address.  It

14:27:40  20  certainly doesn't need to address it to today.  We haven't

14:27:42  21  responded to it.

14:27:43  22             But I think what is at issue today is the idea that

14:27:47  23  Plaintiffs are suggesting that we are -- that we want

14:27:50  24  individual patient medical records concerning abortions without

14:27:55  25  personally identifying information redacted for individual

14:27:59  1   plaintiffs -- or I'm sorry -- individual patients.  That is not

14:28:03  2   true.  It is -- it is allowable to redact such information

14:28:07  3   under a protective order.  We are not interested in the

14:28:09  4   individual patient names.

14:28:10  5        We are interested very much in the use of Digoxin,

14:28:15  6   the widespread use of Digoxin by plaintiff providers

14:28:19  7   themselves, the safety of that use, and the efficacy of that

14:28:22  8   use.  And so that's why -- those are the patient records that

14:28:25  9   we're interested in.

14:28:27  10       And the last time we were before this Court,

14:28:30  11  Your Honor, we heard from -- we heard from Plaintiffs that they

14:28:33  12  would have to do a chart-by-chart review of every medical

14:28:36  13  record, every abortion record that's -- that they have ever

14:28:40  14  performed for whatever years were under review to find what we

14:28:44  15  needed.  That is absolutely false, and that's what the 30(b)(6)

14:28:50  16  depositions last week demonstrated.

14:28:52  17       And so now what we are asking -- and, Your Honor, I'm

14:28:56  18  sure when you were in private practice and have lots of cases

14:29:01  19  before you right now, although many things are electronic --

14:29:03  20  fully electronic now, understand that being able to identify a

14:29:08  21  sample of records via electronic means and either pulling those

14:29:13  22  up, in many cases, via microfilm or scanned records -- because

14:29:18  23  many of the providers, the plaintiffs' providers, now maintain

14:29:22  24  those records via microfilm, not in a warehouse, or they've

14:29:27  25  scanned them via PDF -- which, by the way PDF is OCR-able --

14:29:34  1  and can literally find the patient names who've undergone, by

14:29:42  2  gestational age or whatever it is, and then go in many cases to

14:29:46  3  their online databases of scanned documents -- in some cases,

14:29:51  4  fewer cases, go to the warehouse -- and they can pull those

14:29:55  5  particular records.

14:29:56  6      And that's what we're looking for; that was the key

14:29:59  7  to the depositions last week; and that was what, for six weeks,

14:30:03  8  we heard that they could not do.  They had to do a manual

14:30:06  9  review of every chart.  It's not true.  That's why we're back

14:30:10  10  before you today.

14:30:11  11      If they are going to advance the idea that Digoxin

14:30:15  12  use is unsafe, that it's ineffective, or that it is not in

14:30:20  13  widespread use, we have the right to disprove that case in

14:30:24  14  Texas, regardless of what their experts from Oregon or wherever

14:30:29  15  they're going to come from say about national use.  We want to

14:30:32  16  know what the practices are in Texas because that's what we're

14:30:35  17  dealing with.

14:30:41  18      MS. CREPPS:  Your Honor, this is Janet Crepps.  May I

14:30:43  19  respond?

14:30:43  20      THE COURT:  You may.

14:30:44  21      MS. CREPPS:  Thank you.  So I think that it is

14:30:54  22  comforting that the State is not asking us to produce

14:30:56  23  unredacted medical records.  I don't think that has been clear

14:31:00  24  to us.  However, the timing of producing that is going to be

14:31:08  25  very difficult.  I mean, every single page of the medical

14:31:12  1    charts are going to --

14:31:14  2              THE COURT:  You know, I've been hearing since

14:31:18  3    July the 20th how hard it is to provide things.  I deal with a

14:31:26  4    lot of big cases on various topics.  This is not the only one

14:31:34  5    that it is on an accelerated schedule -- maybe to the merits,

14:31:37  6    but certainly not in other discovery things -- and these

14:31:43  7    problems get worked out.  And they generally get worked out

14:31:46  8    because the party that's resisting the discovery starts

14:31:49  9    providing documents as best they can, and then a discussion

14:31:54  10   arises with the parties seeking the documents over why more of

14:32:00  11   these items can't be produced or why they can't be produced in

14:32:04  12   the forms that they were requested.  That is my vision of

14:32:10  13   proportionality.

14:32:12  14             It is not you stand back and tell me how the sky is

14:32:17  15   falling if you have to do this.  I need to see specific

14:32:24  16   incidents of what the situation is.  And I'm not getting that

14:32:28  17   right now, Ms. Crepps.  I'm just hearing about how hard it is.

14:32:35  18             Well, you know, this is a hard lawsuit.  Lawyers have

14:32:40  19   hard jobs.  It was hard for me when I was in private practice.

14:32:43  20   The only way you get through a discovery block is to produce

14:32:48  21   everything you can possibly produce and then tell the Court --

14:32:52  22   you come to the Court with clean hands because you can't

14:32:55  23   produce any more and specifically why.

14:32:59  24             I haven't heard any information about how many people

14:33:02  25   have gone to warehouses generally and looked.  And guess what?

14:33:10  1    There are 300 boxes, and each box contains 47 files or any of

14:33:17  2    that data.  And we're now, from July 20th to September 20th,

14:33:24  3    and I don't feel like I've had the ball advanced for me in

14:33:30  4    understanding what's fair or reasonable to order and what I may

14:33:34  5    be looking at in November when I try this case in the last two

14:33:42  6    months.

14:33:42  7            Now, tell me how we get off of this point right here?

14:33:46  8    Because we're going to get off of it, and, as I've told you

14:33:49  9    before, I'll start signing orders that I think are fair and

14:33:56 10    equitable to get this case to trial.  But I haven't heard a

14:34:02 11    suggestion from you as to what is fair and equitable in this

14:34:08 12    case.  I just hear a suggestion that it's just too much trouble

14:34:12 13    to provide this information.  But I don't know what you can

14:34:17 14    provide or what you cannot provide.

14:34:21 15            MS. CREPPS:  Your Honor, if I may, I'd like to go

14:34:23 16    back to the scope, the time frame of discovery, because that is

14:34:30 17    a crippling amount of time.  That's where we start getting into

14:34:36 18    thousands of charts.  And those are -- that's including the

14:34:40 19    charts that we could identify from the database.  So I think --

14:34:45 20            THE COURT:  All right.  Stop right there.

14:34:47 21    Ms. Ardolino, Mr. McCarty, whoever wants to speak to this, tell

14:34:52 22    me what you learned in the 30(b)(6) depositions about the bulk

14:34:58 23    of the information that's out there.

14:35:01 24            MS. ARDOLINO:  We learned that the bulk of the

14:35:03 25    information that is out there is contained in either billing or

14:35:07   1   medical records databases and is searchable, at the very least

14:35:12   2   and typically, by gestational age of the patient.  That is a

14:35:17   3   very effective way of limiting the -- the number of possibly

14:35:24   4   responsive records.

14:35:24   5         We have learned that, for the plaintiffs that do

14:35:26   6   currently or have in the past used Digoxin, many of them

14:35:30   7   actually keep logs of their Digoxin use.  We know that, for

14:35:36   8   example, Planned Parenthood of Greater Texas has an entire

14:35:39   9   database dedicated to incident or complications reporting that

14:35:46   10  they can query at any time and, in fact, regularly, at least

14:35:50   11  quarterly, make reports internally for themselves summarizing

14:35:55   12  those complications.

14:35:56   13        They are refusing to provide those reports dating

14:36:00   14  back -- I mean, either entirely or dating back to 2011.  And I

14:36:04   15  actually was in a 30(b)(6) deposition with the Planned

14:36:08   16  Parenthood of Greater Texas corporate witness and I asked her

14:36:12   17  if she could -- about some reports that had already been

14:36:16   18  produced to us for just 2017 and 2016.  And I asked if she

14:36:20   19  could produce those reports going back to 2011 with the same

14:36:24   20  effort of the reports that have already been produced and she

14:36:28   21  said absolutely yes.  And they are just refusing to do it.

14:36:33   22        It's not for -- for these things it is not a question

14:36:36   23  of -- of ability or time.  It is -- it is a question of they're

14:36:43   24  just not willing to provide the information that is very, very

14:36:46   25  relevant to their claims and our defenses.

14:36:54  1          MS. COHEN:  Your Honor, may I respond?  This is
14:36:56  2  Melissa Cohen.

14:36:56  3          THE COURT:  I bet that is Ms. Cohen again.  I can
14:36:59  4  tell by your voice.

14:37:00  5          MS. COHEN:  I'm trying to be very quiet, Your Honor.

14:37:02  6          I would just repeat, again, I think we're getting a
14:37:05  7  little sidetracked here.  But Ms. Ardolino is, again, wrong on
14:37:08  8  this issue.  In our letter earlier today we agreed to provide
14:37:11  9  each of the aggregate reports she just mentioned going back to
14:37:14  10  2011, including the Digoxin log.  We also agreed in the letter
14:37:17  11  to search the incident reporting system for Digoxin
14:37:21  12  complications and provide any information.  I don't think this
14:37:23  13  aggregate data is what is at issue any longer.  I think what is
14:37:28  14  at issue at this point is going into individual patient medical
14:37:34  15  records.

14:37:35  16          THE COURT:  Well, you know, I understand what each of
14:37:42  17  you are saying, and you speak a different language.  Both of
14:37:46  18  you appear to be reasonable, and both of you are saying totally
14:37:50  19  different things.  That does not make it easy on the Court.

14:37:56  20          I'm inclined to appoint a special discovery master at
14:38:01  21  this point and put somebody in there with the documents that
14:38:07  22  has my authority just to look at things and pass them out as
14:38:11  23  that individual sees fit so we can proceed through the next
14:38:18  24  five weeks and get to trial.

14:38:20  25          What is your reaction to that, Ms. Crepps?

14:38:22  1          MS. CREPPS:  Well, Your Honor --

14:38:25  2          THE COURT:  Or Ms. Cohen.  Either one.

14:38:28  3          MS. CREPPS:  Your Honor, I think that if -- if we

14:38:30  4   could narrow the time frame of discovery so that we're not

14:38:37  5   going back all the way to 2011, that --

14:38:41  6          THE COURT:  Well, see.  That's not -- that's not the

14:38:43  7   problem.  The problem is you're not providing anything.  You

14:38:48  8   have a better position if you come to me and say, We've

14:38:52  9   provided everything back through 2014 and we can't get to the

14:38:57 10   rest of it by the time of the trial or we've provided

14:39:01 11   everything back to 2015, and then give me true facts on why you

14:39:06 12   can't go back any farther.

14:39:09 13          My problem with the plaintiffs' position in this

14:39:11 14   matter has been, from the beginning, all I hear about is what

14:39:16 15   you won't supply or disclose or why you can't do it as opposed

14:39:25 16   to anything that shows me that you have provided X amount of

14:39:30 17   documents and there is a reason why you can't provide any more

14:39:34 18   of them.  And that's highly frustrating to the Court.

14:39:40 19          MS. CREPPS:  Yes, Your Honor.  And I think one

14:39:45 20   solution would be for us to provide individual patient

14:39:54 21   information that the State is requesting based on a review of

14:40:01 22   the relevant charts starting in 2017 and working backwards.

14:40:06 23          THE COURT:  Well, you know, you provide little weasel

14:40:11 24   words in there like "relevant," which means you're going to

14:40:14 25   define "relevant."  I don't want anything in this situation

14:40:21  1  that one side or the other gets to characterize.  I want

14:40:26  2  discovery provided that are available records and documents,

14:40:31  3  and neither one of you gets to decide what's relevant.  That's

14:40:37  4  up to me.

14:40:39  5         MS. CREPPS:  And, I apologize, Your Honor.  By

14:40:42  6  "relevant" I meant the defendants have limited their request to

14:40:45  7  14.0 and over and complications from Digoxin --

14:40:51  8  contraindications from Digoxin.  I didn't mean to be making a

14:40:54  9  subjective proposal.  But I -- I have to say, based on what's

14:41:00 10  happened so far, appointment of a special master may in fact be

14:41:03 11  the best route.

14:41:13 12         THE COURT:  All right.  Let me ask the State this

14:41:15 13  question:  If I appoint a discovery master, do you have an

14:41:19 14  ability to pay your share of the costs if I divide the costs

14:41:25 15  without having to go to the Legislature or something like that?

14:41:31 16         MR. MCCARTY:  Yes.

14:41:32 17         MS. ARDOLINO:  I'll let him answer that one.

14:41:34 18         THE COURT:  I'm not asking for detail on it.  But I'm

14:41:36 19  not going to appoint and put a master in here if I'm not

14:41:38 20  certain I can't get him or her paid.

14:41:40 21         MR. MCCARTY:  Yes.  Yes, Your Honor.  And I think

14:41:43 22  given the time constraints that we're under, obviously, it will

14:41:46 23  have to be a special master aided by some staff because they'll

14:41:51 24  have to go through records, et cetera.

14:41:55 25         THE COURT:  I understand.  It will have to both be

14:41:57  1  somebody that can drop everything and get this done, because I

14:42:00  2  want discovery produced -- let me make myself as clear as I

14:42:04  3  can -- and I'm not happy with what has not been produced to

14:42:11  4  date.

14:42:15  5          So let me tell you what I'm going to do.  I do not

14:42:23  6  find anything unreasonable in the proposed order the State has

14:42:28  7  provided of what they want.  But I'm not making a final

14:42:34  8  decision on that at this point, and I'm not signing the order.

14:42:38  9  I'm going to recess this hearing and I'm going to try to find

14:42:43 10  somebody that I have confidence in that I think can handle a

14:42:51 11  complex discovery matter and can handle it for the immediate

14:42:56 12  period of time to get this case moving.

14:42:58 13          That person is going to start with what the State has

14:43:03 14  requested in the order that I have in front of me right now,

14:43:07 15  and it will be up to the plaintiffs to show why that can't be

14:43:13 16  complied with to the satisfaction of the master.

14:43:18 17          If I cannot find anyone, I'm just going to sign that

14:43:22 18  order.  And what that is going to do is the plaintiffs are

14:43:27 19  going to have to start providing that information.  And then,

14:43:32 20  if they can't provide it as requested by the State, they're

14:43:36 21  going to have to tell me in specific paragraphs that, hand in

14:43:46 22  glove with the way the State has requested it, what they can't

14:43:50 23  provide and why they cannot provide it.  So that's where we

14:43:56 24  are.  So I'm not going to sign an order right now, but I'm

14:44:05 25  prepared to sign one either late this afternoon or tomorrow,

14:44:08   1   depending on how well my search goes.

14:44:14   2          Secondly, redacting is a reasonable thing, whether

14:44:17   3   it's physician names or patient names or Social Security

14:44:19   4   numbers.  Everybody knows what the privacies are now.  The

14:44:24   5   defendants don't need to know individual names of patients to

14:44:29   6   get the information they need.  If something comes up in their

14:44:33   7   information that change that, where the State thinks they need

14:44:37   8   a patient name, they can come to me and ask for a specific

14:44:42   9   name.  I do not believe that that is going to happen.  I

14:44:46   10  believe that everyone who is a good lawyer -- and I think both

14:44:50   11  sides of this case are filled with good lawyers -- understand

14:44:55   12  what reasonable redaction is, and you don't need to argue about

14:45:02   13  it.  So take that to heart.

14:45:05   14         On the easier motions -- I think I have a couple of

14:45:11   15  them that have snuck in here -- wanting to file documents under

14:45:15   16  seal, of course I'm going to grant those because anything that

14:45:20   17  I file under seal I can always unseal if it becomes something

14:45:24   18  that is important to get out there.

14:45:28   19         So, if you don't have anything else for me, we're

14:45:31   20  going to recess now and I'm going to try to get this special

14:45:42   21  master thing worked out.  But I want both sides to understand

14:45:44   22  I'm not going to entertain any motions that the special master

14:45:48   23  is being unreasonable.  The special master is going to get in

14:45:50   24  and look at everything and say what's going to be provided and

14:45:53   25  what's not going to be provided.  Do both of you understand

| | | |
|---|---|---|
| 14:45:56 | 1 | that? |
| 14:45:58 | 2 | MS. ARDOLINO:  Yes, Your Honor. |
| 14:45:58 | 3 | MS. CREPPS:  Yes Your Honor. |
| 14:45:59 | 4 | THE COURT:  All right.  Start with the plaintiffs. |
| 14:46:01 | 5 | Ms. Crepps, Ms. Cohen, anything else we need to talk about |
| 14:46:05 | 6 | while I have you available today? |
| 14:46:09 | 7 | MS. CREPPS:  No, Your Honor. |
| 14:46:11 | 8 | THE COURT:  Ms. Ardolino? |
| 14:46:13 | 9 | MS. ARDOLINO:  No, Your Honor. |
| 14:46:15 | 10 | THE COURT:  All right.  I will get back with you-all |
| 14:46:17 | 11 | posthaste.  The Court's in recess. |
| 0:0:0 | 12 | (End of transcript) |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

1    **UNITED STATES DISTRICT COURT      )**

2    **WESTERN DISTRICT OF TEXAS         )**

3         I, Arlinda Rodriguez, Official Court Reporter, United

4    States District Court, Western District of Texas, do certify

5    that the foregoing is a correct transcript from the record of

6    proceedings in the above-entitled matter.

7         I certify that the transcript fees and format comply with

8    those prescribed by the Court and Judicial Conference of the

9    United States.

10        WITNESS MY OFFICIAL HAND this the 21st day of

11   September 2017.

12

13                              /S/ Arlinda Rodriguez
                                Arlinda Rodriguez, Texas CSR 7753
14                              Expiration Date:  12/31/2018
                                Official Court Reporter
15                              United States District Court
                                Austin Division
16                              501 West 5th Street, Suite 4152
                                Austin, Texas 78701
17                              (512) 391-8791

18

19

20

21

22

23

24

25